**UNITED STATES of America,**
**Plaintiff,**

v.

**MORTON SALT COMPANY, International Salt Company, and Diamond Crystal Salt Company, Defendants.**

**No. 4–61 Civ. 162.**

United States District Court
D. Minnesota,
Fourth Division.

Nov. 20, 1962.

---

NORDBYE, District Judge.

The defendants filed a post verdict motion on July 30, 1962, in 4–61 Crim-inal 65 seeking the return and suppression of certain Grand Jury documents. Briefs were filed and arguments presented on September 7, 1962. At the hearing the Court suggested that, in that the criminal case had terminated by a verdict of not guilty, and the Court being informed that the documents in question impounded by court order were in the possession of the Clerk of this Court and the United States Marshal, and that the Government intended to proceed in the civil proceeding against the moving defendants and move under an appropriate rule of the Federal Rules of Civil Procedure for leave to inspect certain of the documents, the better plan would be to await the Government's motion.

John W. Neville, Herbert F. Peters and Jerome A. Hochberg, Attys., Antitrust Division, Dept. of Justice, Washington, D. C., appeared in behalf of plaintiff.

Oppenheimer, Hodgson, Brown, Baer & Wolff, St. Paul, Minn., and McBride, Baker, Wienke & Schlosser, Chicago, Ill., for Morton Salt Co.

Neville, Johnson & Thompson, Minneapolis, Minn., and Putney, Twombly, Hall & Skidmore, New York City, for International Salt Co.

Bowen, Bowen, Preus & Farrell, Minneapolis, Minn., and Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for Diamond Crystal Salt Co.

On October 11, 1962, the Government filed its motion under Rule 34, Federal Rules of Civil Procedure, setting forth in detail the exact documents it desired to inspect. Some of the documents were defendants' business papers. Other documents belonged to other salt companies and salt industry associations. They all were obtained originally by way of subpoenas duces tecum issued out of the office of the Clerk of Court of the Southern Division of the Southern District of Illinois at Springfield, Illinois, on December 28, 1959. The subpoenas were returnable at Springfield on January 25, 1960. On January

21st the defendants obtained an extension of time from one of the Judges of the Southern Division of the Southern District of Illinois whereby the return date of the subpoenas was extended to May 23, 1960. On January 25, 1960, an impounding order by the Springfield court placed these documents and others when produced in the care and custody of the Chicago office of the Antitrust Division, Department of Justice. A Grand Jury was impaneled at Springfield on February 17, 1960, and on that date evidence in the salt industry investigation was introduced before that Grand Jury. On May 23, 1960, defendants, in compliance with the court's order, delivered some 100,000 documents to the Chicago office of the Antitrust Division.

On June 28, 1961, an indictment was returned against the defendants by a Grand Jury sitting in the District of Minnesota, at St. Paul, Minnesota. Subsequently, and after the St. Paul indictment, the impounding order placing the documents in the Antitrust Division at Chicago was amended by the District Court of Illinois at Springfield whereby these documents and others were impounded into the care and custody of the Antitrust Division, Department of Justice, Washington, D. C., for use in preparation for the trial of the criminal case growing out of the indictment returned by the St. Paul Grand Jury. On January 23, 1962, this Court, upon motion of the defendants, ordered the Government to transfer the documents from Washington, D. C., to Minneapolis, Minnesota, in order to permit the defendants to copy and inspect them in order to prepare for the impending criminal trial. The jury in the criminal proceedings against these defendants found them not guilty on June 7, 1962.

The present motion under Rule 34 lists but a few—some 15 in number—of the documents originally impounded. Their relevancy and pertinency to the issues in the civil proceeding is not challenged. The briefs filed by the parties with reference to defendants' motion

of July 30, 1962, will be considered in so far as they are relevant to the Government's motion under Rule 34. Substantially the identical questions presented here were before Judge Devitt prior to and during the trial of the criminal case. His rulings, which were adverse to the defendants, ordinarily would be followed by another Judge of this Court where the same issues are involved. Defendants urge, however, that in view of the verdict of not guilty in the criminal case, they are not able to challenge the validity of Judge Devitt's ruling by way of an appeal. The defendants therefore have requested this Court to rule specifically on the defendants' motion in the criminal case, apparently believing that an appeal would lie if the ruling is adverse. This Court sees no purpose at this time in making a ruling on defendants' motion of July 30, 1962, but the defendants may, upon due notice, move for return of the documents now impounded, other than those covered by the Government's motion herein. This Court, however, will consider anew the matters presented under the Government's motion under Rule 34.

Defendants urge that, in the civil proceeding, this Court should deny plaintiff's motion under Rule 34 because of certain procedure violations of the Antitrust Division of the Department of Justice which may be listed as follows: (1) In the Grand Jury proceeding wherein the documents were obtained by the Government, the attorneys of the Antitrust Division acted thereunder without proper authority; (2) the documents were obtained by means of illegal procedure in violation of defendants' constitutional rights; (3) the attorneys of the Antitrust Division violated certain secrecy rules applicable to Grand Jury procedure; (4) the shifting of the investigation from the Grand Jury in Springfield, Illinois, to the Grand Jury in St. Paul, Minnesota, violated fundamental rules regarding the functions and usages of Grand Juries; (5) in presenting to the St. Paul Grand

Jury the transcript of certain evidence taken before the Springfield Grand Jury, the attorneys of the Antitrust Division were guilty of illegal procedure; and (6) the Grand Jury documents should be returned to the defendants because the documents were all obtained in violation of defendants' constitutional protection against illegal searches and seizures.

It seems obvious that many of the grounds asserted by the defendants in their motion in the criminal case to impound and suppress documents obtained by the Grand Jury subpoenas are not pertinent to the question as to whether the Government's motion under Rule 34 should be granted. We are not concerned here with whether the Antitrust Division has violated certain secrecy rules applicable to Grand Jury procedure or whether or not it had a right to utilize transcripts of evidence obtained before the Springfield Grand Jury in connection with the presentation of its evidence to the St. Paul Grand Jury. Moreover, in view of the admitted circumstances, we necessarily commence with the premise that good cause has been shown in support of the Government's motion under Rule 34, and unless it appears that the criminal procedure by which the documents were obtained originally is so tainted with irregularity that they should not have been made available to the Government at the criminal trial, the defendants do not have any support for their resistance to the Government's motion herein. We do not have a situation where a Grand Jury was utilized for the purpose of obtaining evidence in the civil proceeding now pending. No one questions the bona fides of the Government's attempt to obtain a criminal conviction of these defendants by use of the documentary evidence obtained by Grand Jury subpoenas. The case of In re April Term Grand Jury, 7 Cir., 1956, 239 F.2d 263, is not pertinent here.

■ Reference has been made by the defendants to the published newspaper statement by the Government of its in-

tention to initiate the investigation of the salt industry before a special Grand Jury to be impaneled for that purpose at Rock Island, Illinois, which is in the Northern Division of the Southern District of Illinois. However, in view of the fact that a Grand Jury was summoned to appear on February 17, 1960, at Springfield, which is in the Southern Division of the Southern District of Illinois, the Government procured the subpoenas duces tecum issued December 28, 1959, from the Clerk of Court of that division. The Rock Island Grand Jury heard no witnesses and examined no documents with respect to the so-called salt industry investigation. No irregularity arises by reason of the claimed change in venue from the Rock Island Division to the Springfield Division. As heretofore stated, the documents to be obtained by the initial subpoenas were impounded by order of the Court in the Southern Division of the Southern District of Illinois in the custody of one Earl Jinkinson, Chief of the Midwest Office of the Antitrust Division at Chicago. This order was duly filed and no objection was voiced by the defendants to the documents being subpoenaed and later impounded before any consideration thereof by the Springfield Grand Jury. Nor was any objection voiced by the defendants to the subsequent delivery of these documents to the Midwest Office of the Antitrust Division. In fact, on May 23, 1960, counsel for the defendants produced the documents subpoenaed to the Midwest Office of the Antitrust Division. It appears that the Springfield Grand Jury was in session in connection with the salt industry investigation in October, November and December, 1960, and the record does not disclose any objection by the defendants to the consideration by that Grand Jury of any documents presented to it under and by virtue of the subpoenas issued on December 28, 1959. For some reason not made apparent in this proceeding, the Springfield Grand Jury did not complete its investigation of the salt industry.

A Grand Jury impaneled on or about September 20, 1960, was regularly sitting in St. Paul on February 20, 1961, and from that date it was in session at certain periods investigating the salt industry. As stated, it was on June 28, 1961, that the St. Paul Grand Jury returned the indictment against these defendants.

The defendants attack the appearance of Messrs. Faris, Hunter, Betar, Kenney, Peters, and Jinkinson, attorneys of the United States Department of Justice, before the Grand Jury in Springfield, Illinois, upon the grounds that they were authorized to act only in the Northern Division of the Southern District of Illinois and not in the Southern Division of that District, where the Springfield Grand Jury was in session. It is undisputed, however, that when all of the above-mentioned attorneys appeared before the Springfield Grand Jury, they had been authorized to investigate the salt industry in the Southern District of Illinois, although the assignment designated the Northern Division of that District. Their authorizations were given under Section 310, 5 U.S.C.A., which reads,

"The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

■ It must be apparent that this section vests the authorized officers of the Department of Justice assigned to a District with the same authority as the United States Attorney for that District. Their powers are coterminous. The United States Attorney is authorized under the law to act within his District and is not restricted to any divisions thereof. Thus, it must follow that the attorneys of the Department of Justice are not limited to a division when they are properly assigned to the District in which any division thereof is located. All of these attorneys of the Antitrust Division were regularly assigned to investigate the salt industry in the Southern District of Illinois, and the mere fact that their authorization referred to the Northern Division of that District would not prevent them from participating in an investigation in the Southern Division of that District. If any irregularity can be spelled out of the failure of the Attorney General to mention specifically the Southern Division of the Southern District, it must follow that such irregularity would not justify the Court in quashing and suppressing subpoenas regularly issued by the Clerk of Court for the Southern Division and their regularity thereafter being recognized by one of the Judges of the Southern District.

■■ The defendants challenge the authority of Messrs. Kenney and Peters to appear before the St. Paul Grand Jury in that their authority to act in the District of Minnesota came from a previous officer of the Department of Justice and not from an officer of the Department during the period when these assistants were before that Grand Jury. The facts appear to be as follows: The authorization of Messrs. Kenney and Peters to appear before the St. Paul Grand Jury to investigate the salt industry was signed on January 5, 1961, by Charles K. Rice, who at that time was an Acting Deputy Attorney General. On January 21, 1961, as a result of certain changes brought about by the 1960 presidential election, the now Justice Byron R. White took over the position formerly held by Mr. Rice. The authorization to Messrs. Kenney and Peters was filed on February 20, 1961, at St. Paul, Minnesota. The defendants contend that this authorization from Mr. Rice did not authorize these attorneys to appear before

the St. Paul Grand Jury because at that time Mr. Rice was no longer in office. This contention is clearly untenable in that it is the authority from the duly designated official in the office of the Attorney General which the statute requires, and if that individual thereafter resigns, dies, or is otherwise separated from his office, the authority to act under the authorization is not terminated. In other words, when a designated official acts within the scope of his authority, the authorization must continue until it is revoked or is otherwise terminated. If this were not true, a change of administration or resignation from office by the official who acted within his authority when the designation was made would create a chaotic condition in the administration of the affairs of the Department of Justice.

■■ The defendants attack the authority of Earl Jinkinson to proceed with the salt industry investigation. It does not appear that he ever made any appearance before the Grand Jury. However, he did obtain the subpoenas from the Clerk of Court and an order impounding documents to be used before the Springfield Grand Jury. In any event, Jinkinson was authorized by the Attorney General to conduct Grand Jury proceedings within the Northern Division of the Southern District of Illinois "in connection with the activities and conduct of certain persons, firms, corporations, associations and organizations engaged in the production, sale and distribution of sodium chloride (salt)." A photostatic copy of that authorization dated December 7, 1959, has been made available to this Court and has been filed by the Clerk of this Court. It was not filed by the Clerk of Court at Springfield, Illinois, but it is the authorization and not the filing which authorizes an attorney to act. May v. United States, 8 Cir., 1916, 236 F. 495. As the court stated in Belt v. United States, 5 Cir., 1934, 73 F.2d 888, 889,

" * * * The special assistant was acting under a valid appointment in writing. 5 USCA § 310. It was not rendered invalid by the failure to file or record it. The record of it could at best have been but secondary evidence of its existence."

■ The defendants rest heavily upon the contention that Messrs. Kenney and Peters were not authorized to shift the Grand Jury investigation from Springfield, Illinois, to St. Paul, Minnesota. They urge that the United States Attorney in the Southern Division of Illinois could not shift the Grand Jury proceedings from Springfield, Illinois, to St. Paul, Minnesota, and hence these attorneys of the Department of Justice were likewise limited in their authority. But obviously that argument is devoid of any substance and wholly without merit. Messrs. Kenney and Peters were regularly assigned to act in the investigation of the salt industry in both Districts. If the United States Attorney for the Southern District of Illinois began to investigate the salt industry, there would be no legal barrier which would prevent a Grand Jury in the District of Minnesota from proceeding with a similar investigation and returning an indictment on the evidence before it. The Springfield Grand Jury, after investigation, might return a no bill. But that action would not prevent the United States Attorney in Minnesota from presenting evidence to a Grand Jury in his District and proceeding with the same investigation. That this view is sound seems evident from the language of the Supreme Court in United States v. Thompson, 1920, 251 U.S. 407, 413, 40 S.Ct. 289, 291, 64 L.Ed. 333,

"That the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not therefore dependent for its exertion upon the approval or disapproval of the court; that this power is continuous and is therefore not exhausted or limited by adverse action taken by a grand jury or by its failure to act, and hence may thereafter be exerted as to the same instances by the same or a subsequent grand jury."

Again, it must be emphasized that, notwithstanding the apparent abortive inquiry by the Springfield Grand Jury as to antitrust violations by the salt industry, there is not the slightest showing here that its inquiry was not made in good faith and by a legally constituted Grand Jury engaged in determining whether or not there had been an antitrust violation by certain concerns in the salt industry. Its failure to conclude its investigation did not prevent a Grand Jury in another District from continuing an investigation of the same matter, and as to the propriety of the St. Paul Grand Jury giving consideration to the documents procured by the subpoenas issued December 28, 1959, or to evidence based thereon, there is no showing here that the documents listed in this motion were ever before the St. Paul Grand Jury or considered by it. If there was any irregularity in the use of the subpoenaed documents before the St. Paul Grand Jury, that question is not before this Court in this proceeding under Rule 34.

Coming now to the contentions of the defendants that the documents, including those listed in the Government's motion under Rule 34, were obtained by illegal procedure which was in violation of their constitutional rights, it appears that this claim and contention is predicated upon the issuance of subpoenas duces tecum by the Clerk of Court at Springfield, Illinois, at the instance of Mr. Jinkinson when the Springfield Grand Jury was in recess and before a new Grand Jury had been summoned. Thus, it is urged that, although the subpoenas were valid on their face, they were invalid in fact and constituted a violation of the Fourth Amendment's protection against unreasonable search and seizure by compelling the defendants to produce documents now involved in the Government's motion under Rule 34. Admittedly, a corporation can invoke the protection of the Fourth Amendment in attacking a Grand Jury subpoena under certain circumstances. See Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652, and Federal Trade Commission v. American Tobacco Co., 1924, 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696. But defendants' position that their constitutional rights have been violated is patently unsound. These subpoenas were not tainted with irregularity as defendants argue. Mr. Jinkinson, an Antitrust Division attorney, was duly authorized to conduct the salt industry investigation. Acting under his authority he went to the Clerk's office at Springfield, Illinois, and at his instance the subpoenas in dispute were issued by the Clerk under the seal of the Court. Thereafter, the Court made an order authorizing the subpoenaed documents when produced to be lodged in Mr. Jinkinson's office. The right of government counsel to inspect documents before presenting them to the Grand Jury is well recognized and fairly comes within the purview of Rule 17(c), Federal Rules of Criminal Procedure. Everything that Mr. Jinkinson did in this regard came within the authority of the United States Attorney for that District, and admittedly, under the authority granted, in doing what he did he stood in the shoes of the United States Attorney.

There are many matters covered by the defendants' brief which are not pertinent to the motion under consideration. Repetitive statements to the effect that the Government has flouted the law in obtaining the documents in question are not borne out by the facts. Impounding orders in connection with Grand Jury investigations are frequently used. See Perlman v. United States, 1918, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; United States v. McHie, D.C.N.D., Ill., 1912, 196 F. 586; United States v. B. Goedde & Co., D.C.E.D.Ill., 1941, 40 F.Supp. 523; Gray v. Schneider, 2 Cir., 1902, 119 F. 474; and Application of Bendix Aviation Corp., D.C.S.D.N.Y., 1945, 58 F.Supp. 953. The Court has duly considered the decisions upon which the defendants primarily rely. Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64

L.Ed. 319, and United States v. Proctor & Gamble, 356 U.S. 677, 7 S.Ct. 983, 2 L.Ed.2d 1077. They render the defendants no aid in their opposition to the Government's motion. The documents in question, with court approval and defendants' acquiescence, were produced by subpoenas in connection with a Grand Jury's investigation of the salt industry. A portion of them were presented to the Grand Jury for whose consideration they were subpoenaed. Later they were used by the Government and defendants in preparation for and during the trial of an indictment returned against these defendants by a Grand Jury regularly and legally impaneled. They now are lawfully in the possession of this Court and the Government has shown good cause for its right to inspect and copy under Rule 34, Federal Rules of Civil Procedure, as prayed for in its motion thereunder.

It follows from the foregoing that the Government's motion to inspect and copy or cause to be copied by photostating or other appropriate means the documents listed in its motion filed October 11, 1962, is granted. It is so ordered. An exception is reserved to the defendants.