**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mitchell MILLER, Susan McDuffie Weeks, and John Henry McDuffie, Defendants-Appellants.**

**No. 73–2405.**

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1975.

D. L. Rampey, Jr., Warner Robins, Ga., for Miller.

W. W. Larsen, Jr., Dublin, Ga., for Weeks and McDuffie.

William J. Schloth, U. S. Atty., Ronald T. Knight, O. Hale Almand, Asst. U. S. Attys., Macon, Ga., Ivan Michael Schaeffer, Appellate Sect., Crim. Div., Dept. of

---

Justice, Washington, D. C., for plaintiff-appellee.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before GEWIN, GOLDBERG and CLARK, Circuit Judges.

PER CURIAM:

The Petition for Rehearing filed on behalf of Appellee (U.S.A.) is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

SIMPSON, Circuit Judge, joined by BROWN, Chief Judge, and BELL, AINSWORTH, DYER, RONEY and GEE, Circuit Judges, dissenting:

With deference, we here enter our vigorous dissent from the full court's failure, by a narrow 8–7 vote, to grant the Petition of the United States for Rehearing en Banc. Our dissent is dictated by two basic reasons.

In the first place, the panel opinion departs radically from prior decisions denying to bank customers the standing to challenge subpoenas of bank records of their accounts. We disagree with the panel holding that such a result is either required or supported by California Bankers Association v. Shultz, 1974, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812. Neither may the panel decision be justified under the copying and reporting requirements of the Bank Secrecy Act of 1970, 12 U.S.C., §§ 1829b, 1730d, 1951–1959, and its implementing regulations, 31 C.F.R. § 103.34(b)(3) (1973) and 31 C.F.R. § 103.36 (1973). The panel opinion appears to be oblivious to the momentous change it would put in motion by its cursory treatment of the question of standing and its bland assumption that the depositor-appellant Miller had standing here to attack the subpoenas duces tecum directed to the banks.

Secondly, if the presence of standing on the part of the depositor is assumed *arguendo*, and the merits of the panel decision are considered, we disagree that the process involved here was so infirm as to dictate reversal of the district court. Finding the process faulty, the panel reverses without determining whether the alleged error is of such a nature as to require reversal. The implication is that faulty process *per se* is reversible error. We do not at all agree that the process below was faulty, but assuming that it was, prejudice to the appellant from such defect was not shown to have resulted and hence reversal is not indicated.

The following facts emerge from the panel opinion and from the briefs of the parties before the panel and the petition for rehearing en banc of the United States.

The appellant Miller and four others were indicted for conspiracy to defraud the United States in connection with the manufacture and possession of non-tax-paid distilled spirits, 18 U.S.C. § 371 and 26 U.S.C. § 5601 et seq., and corresponding related substantive offenses. Miller was the hub of the conspiracy, its source of necessary operating funds, its guiding intelligence and the director of its operations. At a second trial, following a mistrial, he was convicted by a jury of conspiracy and of the three substantive charges for which he was tried. Concurrent three year confinement sentences were imposed on him. Miller's conviction is reversed for retrial by the panel decision.

The alleged trial error with which we are concerned on the Petition of the United States for Rehearing en Banc is the admission into evidence of microfilm copies of Miller's bank checks kept pursuant to the record-keeping provisions of the Bank Secrecy Act and obtained by grand jury subpoenas duces tecum directed to two banks at which he conducted banking business. On appeal, Miller challenged the legality of the subpoenas as not issued under the direction of the court, because no return was made on them, and because they were returnable to a date when the grand jury was not scheduled to be in session.[1] The two banks allowed inspection by revenue agents on the bank premises; the bank representatives were then relieved of any obligation to appear before the U. S. Attorney or before the grand jury.

The panel accorded to Miller the requisite standing to complain of the claimed illegality of the subpoenas duces tecum, and held that the subpoenas were fatally defective. The bank's waiver of defects was held not to bind the depositor Miller because of his protected interest in bank records kept pursuant to the Bank Secrecy Act and pertaining to his account.

The panel's grounds for this decision are unclear. Language in the opinion indicates both that the panel considered Miller to have an ownership interest and a cognizable privacy interest.[2] But the new interest is recognized in the customer in order to prevent the copying requirements of the Bank Secrecy Act from being used as a means of circumventing the protection accorded an individual's "private papers" by the Fourth Amendment. See Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.[3] Once a protected right in the bank records is established, a depositor's standing follows.

Ruling sub silentio that a depositor has standing to challenge a grand jury subpoena of bank records of his account,[4] the panel renounces earlier case law and accords to a depositor rights that he never enjoyed prior to passage of the Bank Secrecy Act. With unanimity the earlier cases denied to a depositor the standing to challenge IRS subpoenas of bank records pertaining to his banking transactions, including microfilm copies of checks. See Harris v. United States, 9 Cir. 1969, 413 F.2d 316; Galbraith v. United States, 10 Cir. 1968, 387 F.2d 617; O'Donnell v. Sullivan, 1 Cir. 1966, 364 F.2d 43, cert. denied 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433; Application of Cole, 2 Cir. 1965, 342 F.2d 5, cert. denied 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723; DeMasters v. Arend, 9 Cir. 1963, 313 F.2d 79, cert. dism. 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269; Foster v. United States, 2 Cir. 1959, 265 F.2d 183, cert. denied 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261.[5] Such records were

---

1. The subpoenas issued at the request of the United States Attorney on January 23, 1973 and ordered production of the bank records before the grand jury on January 24. The grand jury did not meet, however, until February 12.

2. We note in this connection the panel's reliance upon Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, dealing with the compulsory production of an individual's "private papers", and reference to "their [i. e. the depositors'] records", 500 F.2d at 757, along with the statements that "an unlawful invasion of Miller's privacy" occurred, Id. at 756 (emphasis added) and that "he whose rights are threatened by the improper disclosure here was a bank depositor, not a bank official." Id. at 758 (emphasis added).

3. [The government]
   may not cavalierly circumvent Boyd's pre-

cious protection by first requiring a third party bank to copy all of its depositors' personal checks and then, with an improper invocation of legal process, calling upon the bank to allow inspection and reproduction of those copies.
500 F.2d at 757.

4. The panel opinion glides over the standing issue. At a minimum a more detailed explanation of the panel's reasons for its action should be accorded to the United States.

5. The records in the cases cited in the text encompassed books, papers, records, memos, and included signature cards, ledger sheets, deposit slips, credit files, applications for loans, financial statements, loan ledger sheets, memos relating to secured or unsecured commercial and personal loans, microfilms of checks and of debit memos charged to an account.

deemed to be the property of the bank, and the cases denied recognition of any depositors' rights to them, whether sought under an ownership theory, see *Harris,* supra, *Galbraith,* supra, *O'Donnell,* supra, *Application of Cole,* supra, *DeMasters,* supra, *Foster,* supra, or by virtue of an agency theory, see *Harris,* supra, and Schulze v. Rayunec, 7 Cir. 1965, 350 F.2d 666, cert. denied Boughner v. Schulze, 382 U.S. 919, 86 S.Ct. 293, 15 L.Ed.2d 234. Accordingly, as the Ninth Circuit held in *DeMasters,* supra, if any right was violated, the right was that of the bank, not the customer, and the bank could waive any right it might have to resist production under subpoena. 313 F.2d at 85.

While we have not located any case in which a depositor claimed a cognizable privacy interest sufficient to confer standing under Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct 507, 19 L.Ed.2d 576, at least one post-*Katz* case which denied standing recognized that a check cannot be considered a confidential communication. See *Harris,* supra. When a customer writes a check, he "set[s] the check afloat on a sea of strangers", and knows when he does so that it

> will be viewed by various employees at the bank where it is cashed or deposited, at the clearing house through which it must pass, and at his own bank to which it will eventually return.

413 F.2d at 319–320. It is a negotiable instrument in commerce. See *Harris,* supra; *California Bankers,* 416 U.S. at 48–49, 94 S.Ct. at 1511, 39 L.Ed.2d at 833. A drawer has no assurance that his payee will not endorse, nor that the endorsee will not further endorse. Nor can he prevent this. In drawing a check, he does not exhibit an actual expectation of privacy which society is prepared to accept as reasonable. See *Katz,* 389 U.S.

at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring).

The question presented by the government petition, which this Court by a one-vote margin declines to consider en banc, is whether the intervening statutory *requirement* of the Bank Secrecy Act of 1970 that banks compile and retain records of transactions with their customers, including microfilming, held constitutional in *California Bankers,* conferred standing upon depositors where it was not previously recognized.[6] Our position is that standing was not so conferred.

The fact that the United States by statute now requires banks to microfilm checks and other records of dealings with customers makes such records no more the property of the customer than they were when the banks microfilmed voluntarily. As the Supreme Court noted in *California Bankers,* the bank is not a disinterested bystander, but is a party to the transaction. 416 U.S. at 48–49, 94 S.Ct. at 1511, 39 L.Ed.2d at 833. It pays for the records and stores them. It could not be seriously contended that a customer has a right to them sufficient to obtain and retain possession of them. While of course the records pertain to customers' accounts, they do not *ipso facto* become the depositors' records.

Nor is it any more reasonable now than heretofore to have a "reasonable expectation of privacy". Indeed it is less reasonable, because the records are now required to be maintained by statute, whereas prior to the passage of the Act microfilms were kept at the business discretion of banks, and customers were not informed of the practices of their own bank, or of other banks involved in the collecting process. See *Harris,* supra. Any one of the checks in the instant case might as easily have been endorsed by the payee to a third party. The privacy

---

**6.** It should be pointed out that this precise issue was expressly reserved by the Supreme Court:

> Claims of depositors against the compulsion by lawful process of bank records in-

volving the depositors' own transactions must wait until such process issues.
416 U.S. at 51–52, 94 S.Ct. at 1512, 39 L.Ed.2d at 835.

which is alleged to exist actually rests not in the expected confidentiality of communications with one's bank but in the belief that a party to a check will remain anonymous because viewers of the instrument will not know who he is, attach significance to the transaction, or remember its details.[7] We consider it an anomaly that a statute designed to grant greater government access to bank records results here in a restriction on government access to such records. The result reached stands the statutory scheme on its head.

The Supreme Court decision in *California Bankers* does not compel a different result. The precise issue before the panel of this Court was there reserved for decision. See n. 6, *supra.* But the Supreme Court noted expressly that:

> We decided long ago that an Internal Revenue summons directed to a third-party bank was not a violation of the Fourth Amendment rights of either the bank or the person under investigation by the taxing authorities. See First National Bank v. United States, 267 U.S. 576, 45 S.Ct. 231, 69 L.Ed. 796 (1925), aff'g 295 F. 142 (S.D.Ala.1924); Donaldson v. United States, 400 U.S. 517, 522, 91 S.Ct. 534, 538, 27 L.Ed.2d 580 (1971). "[I]t is difficult to see how the summoning of a third party, and the records of a third party, can violate the rights of taxpayer, even if a criminal prosecution is contemplated or in progress." Donaldson v. United States, supra, at 537, 91 S.Ct. at 545 (Douglas, J., concurring).

416 U.S. at 53, 94 S.Ct. at 1513, 39 L.Ed.2d at 835.[8]

Although the Court recognized that the bank acts under compulsion of the statute in taking checks and making the microfilms, "it is equally clear that in doing so *it neither searches nor seizes records in which the depositor has a Fourth Amendment right.*" 416 U.S. at 54, 94 S.Ct. at 1513, 39 L.Ed.2d at 836 (emphasis added). We find trouble in understanding the process by which a depositor acquires a greater Fourth Amendment right in the copies produced. See dissenting opinion of Mr. Justice Marshall, 416 U.S. at 97, 94 S.Ct. at 1535, 39 L.Ed.2d at 861, in which he points out that the majority opinion intimates a lack of standing on the part of customers respecting copies. This Court's panel in *Miller* confuses the rights of the banks with the rights of their depositors.[9]

Going to our second objection to the panel holding, and assuming that appellant Miller had standing to challenge the validity of the subpoenas, we do not agree that they were defective. And even if the subpoenas were defective, no prejudice is shown such as to require their suppression. This court at a minimum should remand for hearing and determination by the district court as to whether the government was preparing in good faith for presentment of pertinent records to the grand jury or was merely on a "fishing expedition".

The process referred to by the Supreme Court in *California Bankers* is

---

**7.** Of course, the customer may reasonably expect that the bank will not release information pertaining to his affairs indiscriminately, to any chance person off the street making inquiries. This expectation may rest upon contract or fiduciary concepts, and may even be enforceable against the bank under state law. Fear of suit or the desire to retain or increase deposits may well impel a bank to contest a faulty subpoena, to give notice to the depositor that records of his account are sought, and to protect the customer's interests otherwise to the extent legally permissible. None of this however would suffice to protect a customer from a lawfully issued subpoena directed to a bank nor would it give

him standing to contest it. See McMann v. Securities and Exchange Commission, 2 Cir. 1937, 87 F.2d 377, cert. denied 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342.

**8.** Cf. Couch v. United States, 1973, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548; United States v. White, 5 Cir. 1973, 477 F.2d 757, aff'd en banc, 5 Cir. 1973, 487 F.2d 1335.

**9.** The Supreme Court's concern as to limiting access to records "by existing legal process" alluded to by the panel opinion, 500 F.2d at 757, is not inconsistent with this position. Under existing legal process only the banks have standing to object.

*"existing"* legal process. 416 U.S. at 52, 94 S.Ct. at 1513, 39 L.Ed.2d at 835. That case imposed no stricter standard where bank records are the object demanded for production than for production of any other type of record.[10]

The *Miller* panel's finding of defectiveness apparently stems from three circumstances: (1) the delay of nineteen days between the issue date of the subpoenas and the scheduled grand jury meeting, (2) the lack of a return on the process, and (3) the fact that the U. S. Attorney, rather than the court or the grand jury, initiated the process.[11] We are persuaded nonetheless that the subpoenas were not faulty so long as the U. S. Attorney was preparing in good faith for the grand jury session. *Morton Salt,* infra.

The panel finds merit in Miller's objection that the subpoenas were not issued at the direction of the court or at the instance of the grand jury, but solely at the discretion of the U. S. Attorney.[12] There is no basis for valid objection to this practice. It is entirely normal and usual, has been repeatedly upheld, is necessary to the efficient investigation of crime by conserving a grand jury's time, and is authorized by F.R.Crim.P. 17(a). See United States v. Culver (D.Md.1963) 224 F.Supp. 419; In Re Subpoena Duces Tecum (E.D.Tenn.1916) 248 F. 137.

United States v. Morton Salt Co. (D.Minn.1962), 216 F.Supp. 250, aff'd 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36, is closely in point. In *Morton Salt* the U. S. Attorney procured a subpoena duces tecum issued from the office of the clerk of the court on December 28, 1959, although the grand jury was not to be impaneled until February 17, 1960. The defendants contended that this procedure was improper. The court termed this argument "patently unsound". 216 F.Supp. at 257. The special prosecutor, an attorney from the Anti-Trust Division of the Department of Justice, was duly authorized to conduct the investigation, and acted under his authority in procuring the issuance. *Id.*

The *Miller* panel opinion also relies on the circumstances that no grand jury was in session when the subpoenas issued and that no returns were made of service thereon.

We stated in United States v. Hedge, 5 Cir. 1972, 462 F.2d 220, 223 that a witness subpoena for a trial was properly returnable only at the place of trial,

**10.** Mr. Justice Powell, in his concurring opinion joined by Mr. Justice Blackmun, expressed concern over the potential for abuse should the regulation's reporting requirements be significantly extended. 416 U.S. at 78–79, 94 S.Ct. at 1526, 39 L.Ed.2d at 850–851. This concern arises because

the legislative scheme permits access to this information without invocation of the judicial process. In such instances, the important responsibility for balancing societal and individual interests is left to unreviewed executive discretion, rather than the scrutiny of a neutral magistrate.

416 U.S. at 79, 94 S.Ct. at 1526, 39 L.Ed.2d at 850–851. But the *Miller* panel of this Court faced an entirely different situation. The reporting provisions are not involved in this case. Access was sought by means of "judicial process", i.e. grand jury subpoena, to copies of bank records. Further, the subpoena when issued was subject to scrutiny by a neutral magistrate should its validity be challenged by individuals with standing. See F.R. Crim.P. 17(c).

**11.** See the statement, 500 F.2d 757–758:

Surely a purported grand jury subpoena, issued not by the court or by the grand jury, but by the United States Attorney's office, for a date when no grand jury was in session, and which in effect compelled broad disclosure of Miller's financial records to the government, does not constitute sufficient "legal process" within the meaning of the majority opinion.

This *ad hominem* statement, together with a footnote (n. 6, at p. 758 of 500 F.2d) and accompanying text, revisiting Mr. Justice Powell's *caveat* (416 U.S. at 78–79, 94 S.Ct. at 1526, 39 L.Ed.2d at 850–851), represents the closest approach of the *Miller* panel to a statement of reasons for finding the process defective.

**12.** Miller argues on brief that the subpoenas did not issue under an order of court, an apparent basis in part for the court's decision. We assume in this dissent that Miller's complaint—that the subpoenas did not issue when the grand jury was in session—includes a claim of defectiveness because not issued at the grand jury's request.

and that a subpoena directing witnesses to appear at the U. S. Attorney's office on the Sunday before trial was improper, citing Rule 17(a) F.R.Crim.P., but refused to find prejudice to the appellant in the violation of the rule. Accord, United States v. Standard Oil Co., 7 Cir. 1963, 316 F.2d 884. We find no conflict between the position we take and the view announced in *Hedge*, supra. It bears emphasis that *Hedge* dealt with a trial situation, in contrast to the grand jury investigation involved in *Miller*. In our judgment, the difference is controlling. To the extent if any, that *Hedge* announces a rule at variance with the Supreme Court's holding in *Morton Salt*, supra, it should go without saying that we must follow the Supreme Court.

The U. S. Attorney is the guiding arm of the grand jury, concerned with the orderly presentation of information before that body. It is customary practice in the courts for documents and witnesses to be subpoenaed in advance to eliminate unnecessary material, allow for the orderly presentation of evidence, and save the time of grand jurors.[13] See United States v. Johns-Manville Corp., E.D.Pa.1962, 213 F.Supp. 65, n. 20 at 73–74. To refuse the U. S. Attorney power to subpoena documents before the grand jury actually meets in situations where he is preparing in good faith to make a presentation to the grand jury substantially interferes with the orderly operation of that body.

The grand jury in the instant case did in fact meet nineteen days after the subpoenas duces tecum were issued. There should be no suspicion of prosecutorial bad faith on the sole basis of production being sought at a time prior to the date when the grand jury was to meet. We do not read Miller's allegations of a "fishing expedition" to urge that the records were not sought on behalf of the grand jury for an investigation by that body. If they are to be so construed, a remand is in order for a hearing as to whether the U. S. Attorney was or was not preparing in good faith to present relevant matters to the grand jury.

Finally, even if it is held that the process was defective because the grand jury was not in session, we indicated in *Hedge*, supra, that a showing of prejudice was necessary before corrective action should be ordered. It is impossible to read prejudice as present *ipso facto* on the basis of the grand jury being out of session, or the failure to endorse a return on the process.

For the foregoing reasons, we dissent from the failure of the court to consider this case en banc. This decision, now permitted to stand, will impose severe handicaps to the orderly conduct of official business by U. S. Attorneys throughout this Circuit.

---

**13.** In *Morton Salt,* supra, an impounding order was issued by the court on January 25, 1960, after the subpoena was issued. The trial court held that the right of government counsel to inspect the documents before presenting them to the grand jury fell within the scope of F.R.Crim.P. 17(c). 216 F.Supp. at 257. Whether a court order is mandatory was not addressed. Our tendency would be to hold that it is not. Interpretations of F.R. Crim.P. 17(c) indicate that the provision for court order was designed to apply, not in situations as in *Miller*, but to pretrial production of documents in order to expedite trials and avoid delays while parties search for and read documents before offering them into evidence. See 8 Moore's Fed.Prac. ¶ 17.07; 1 Wright, Fed.Prac. and Proc. § 274 at 550–51. Even in this situation, the jurisprudence is unclear as to whether the court's discretion must be invoked. See 1 Wright, Fed.Prac. and Proc. § 274 at 551.