UNITED STATES of America

v.

Frank CEDRONE and Lenora Cedrone,
Defendants.

UNITED STATES of America

v.

Vito M. PASTORE, Defendant.

UNITED STATES of America

v.

Dominick J. GALONI, Defendant.

Nos. 74–CR–75, 74–CR–76 and 74–CR–77.

United States District Court,
N. D. New York.

Sept. 15, 1975.

**1204**

John E. Shaffer, Syracuse, N.Y., for Frank Cedrone, Lenora Cedrone and Dominick J. Galoni.

Norman A. Palmiere, Rochester, N.Y., for Vito M. Pastore.

James M. Sullivan, Jr., U.S. Atty., N.D.N.Y., for United States of America; George H. Lowe, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

## OPINION

MacMAHON, District Judge.*

Defendants, indicted for violations of the income tax laws,[1] move to suppress evidence obtained by the Internal Revenue Service (IRS) from the New York Organized Crime Task Force (OCTF). Decision of the motions requires familiarity with the following factual background.

A sewer district was created in the Town of Fleming, Cayuga County, New York, in February 1969. Bids initially received for the construction of the sewer were in excess of authorization. Second call for bids was, therefore, issued by the Town, and a contract was granted on the second bid to Kenneth C. Marshall, d/b/a J & K Pipe Company. Marshall later filed an assumed name certificate of Ron-Ore Soil Systems, which was then incorporated under the name of Ron-Ore Soil Systems, Ltd. (Ron-Ore) in December 1970. Defendant, Frank Cedrone, was project manager for the construction. In August 1972, Ron-Ore was removed from the project, at which time an alleged forged performance bond was discovered. Subsequently, OCTF commenced an investigation, pursuant to New York Executive Law § 70-a (18 McKinney), in March 1973. Subpoenas and subpoenas duces tecum were issued to defendants and others.

The government asserts that OCTF obtained the following types of evidence pertaining to defendants:

1. Records obtained from banking institutions pertaining to accounts of defendants;

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. Frank Cedrone and Lenora Cedrone, 74-CR-75, were indicted on five counts of attempting to evade income taxes and wilfully making false statements, 26 U.S.C. §§ 7201 and 7206(1). Vito Pastore, 74-CR-76, was indicted on one count of attempting to evade income taxes, 26 U.S.C. § 7201. Dominick Galoni, 74-CR-77, was indicted on two counts of attempting to evade income taxes and wilfully making false statements, 26 U.S.C. §§ 7201 and 7206(1). Since all three cases involve the same facts and issues, defendants' motions to suppress will be considered together.

2. Records obtained from banking institutions pertaining to accounts of corporate depositors;

3. Records obtained from corporations, towns, counties and the state;

4. Corporate, town, county and state records obtained from defendants.

5. Testimony under oath by defendants, Frank Cedrone, Lenora Cedrone and Dominick Galoni, in response to questions asked by an OCTF Assistant Attorney General. Defendant Pastore refused to submit to an oral examination.

As a result of this investigation, state indictments were returned against Ron-Ore, defendant Frank Cedrone, defendant Galoni and others. However, Judge Aloi of the New York Supreme Court, Onondaga County, dismissed the indictments, *People v. Ron-Ore Soil Systems, Ltd.,* 81 Misc.2d 121, 364 N.Y.S.2d 310 (1975), on the ground that Executive Law § 70–a was unconstitutionally vague for failing to define the term "organized crime" and held the statute invalid on its face and as applied. An appeal from that decision is presently pending in the New York courts.

The government concedes that a sizable amount of evidence was obtained by the IRS from OCTF. The question here is whether such evidence is admissible in this federal prosecution. Defendants have requested that we also declare Executive Law § 70–a unconstitutional. However, in view of the proper pendency of that question in the New York state courts and our conclusion that such a decision is unnecessary to the resolution of the issue before us, we refrain from consideration of the statute's constitutionality. Instead, we shall assume, without deciding, that § 70–a is unconstitutional and that the OCTF was without authority to conduct the investigation or to issue subpoenas.

In former days, all evidence obtained by state officials was admissible in federal prosecutions, regardless of the manner by which it was obtained, under the so-called "silver-platter" doctrine. That doctrine, however, has long been discredited. Whether evidence obtained by state officials must be suppressed in a federal prosecution is a question for the federal court to decide, and state officials are held to the same requirements of constitutional regularity as federal officials.[2]

Defendants contend that the investigation by OTCF violated their constitutional rights under the fourth and fifth amendments. The government counters by asserting that defendants lack standing to object to some of the evidence and waived their rights as to the rest. Our analysis of the issues thus raised is aided by consideration of each type of evidence separately.

I. *Bank records pertaining to accounts of defendants obtained from banking institutions.*

In order to challenge the use of these records on fourth amendment grounds, defendants must first establish standing. To do so, they call our attention to the recent case of *United States v. Miller,* 500 F.2d 751 (5th Cir. 1971), which held that copies of bank checks obtained by means of a faulty subpoena duces tecum constituted an unlawful invasion of privacy of the depositors under investigation. That court conferred standing on the depositors to raise this objection.

The *Miller* holding, however, is contrary to the law in virtually every other circuit in the country,[3] and its correct-

2. *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

3. See, *e. g., United States v. Continental Bank & Trust Co.,* 503 F.2d 45 (10th Cir. 1974); *Harris v. United States,* 413 F.2d 316 (9th Cir. 1969); *O'Donnell v. Sullivan,* 364 F.2d 43 (1st Cir. 1966); *United States v. Peoples Deposit Bank & Trust Co.,* 112 F.Supp. 720 (E.D.Ky.1953), *aff'd,* 212 F.2d 86 (6th Cir. 1954).

ness has been vigorously questioned even within the Fifth Circuit. This is seen from the dissenting opinion upon that court's denial of an *en banc* rehearing of *Miller* by an 8–7 vote, where it was stated:

"[T]he panel opinion departs radically from prior decisions denying to bank customers the standing to challenge subpoenas of bank records of their accounts. . . . The panel opinion appears to be oblivious to the momentous change it would put in motion by its cursory treatment of the question of standing and its bland assumption that the depositor-appellant Miller had standing here to attack the subpoenas duces tecum directed to the banks."[4]

The government's petition for certiorari in *Miller* was granted by the Supreme Court on June 9, 1975 (421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678). We cannot await a dispositive holding on this question by the Supreme Court. We, therefore, feel compelled to follow the decisions of this circuit and hold that defendants lack standing to raise a fourth amendment objection to this evidence.[5]

Defendants likewise lack standing to raise a fifth amendment objection. As was stated by the Supreme Court in *California Bankers Ass'n v. Shultz*, 416 U. S. 21, 55, 94 S.Ct. 1494, 1514, 39 L.Ed.2d 812 (1974), "a party incriminated by evidence produced by a third party sustains no violation of his own Fifth Amendment rights."

Therefore, since defendants lack standing to object to the use of this type of evidence, it is fully admissible at trial.

II. *Records obtained from banking institutions pertaining to accounts of corporate depositors.*

■ As we have already held defendants lack standing to object to evidence

obtained from banks pertaining to their own accounts, *a fortiori*, they lack standing to object when the accounts are those of corporate entities.

III. *Records obtained from corporations towns, counties and the state.*

■■ The same reasoning applies to this type of evidence as applied to the two types already considered. If the rights of any one were invaded by the alleged faulty subpoenas, it was the rights of the corporations surrendering these documents, and not those of the defendants. (Towns, counties and states are not within the protection afforded by the fourth and fifth amendments.) Thus, defendants lack standing to object to the admissibility of this type of evidence.

IV. *Corporate, town, county and state records obtained from defendants.*

■ Defendants have no colorable claim of standing to object to the use of these town, county and state records. The use of the corporate records raises issues which require some elaboration.

■ It is clear that defendants lack standing to challenge the use of these corporate records on fifth amendment grounds. In *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the Supreme Court held that a corporate officer could not claim his privilege against self-incrimination to justify his refusal to produce corporate books pursuant to a grand jury subpoena. This was extended in later cases to include records of an unincorporated association.[6] And in *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L. Ed.2d 678 (1974), this doctrine was extended to preclude a member of a dissolved partnership from claiming his fifth amendment privilege to justify his refusal to produce partnership financial books and records.

4. 508 F.2d 588, 589 (5th Cir. 1975).

5. See *Foster v. United States*, 265 F.2d 183 (2d Cir. 1959) ; *Application of Cole*, 342 F. 2d 5 (2d Cir. 1965).

6. *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944) ; *Curcio v. United States*, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).

■ There remains the question whether defendants may assert a fourth amendment objection to this type of evidence. In the past, the law was clear on this point:

"When a man chooses to avail himself of the privilege of doing business as a corporation, even though he is its sole shareholder, he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation."[7]

Some doubt has entered this area, largely due to the case of *Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). There, the Nassau County District Attorney issued a subpoena duces tecum to a labor union. When the union refused to comply, state officials conducted a warrantless search of the union offices, in which DeForte was working, and seized certain union records. The Supreme Court held that DeForte had standing to raise a fourth amendment objection to the use of these records against him since he was legitimately on the premises searched and since he had a reasonable expectation of freedom from governmental intrusion.

We question whether the same considerations appear in the present case. Defendants did not refuse to comply with the subpoenas, and no state officials invaded any area where defendants might have an expectation of privacy.

In *United States v. Britt,* 508 F.2d 1052 (5th Cir. 1975), the court, commenting on *Mancusi v. DeForte, supra,* held that an individual cannot claim standing to object to corporate records illegally seized solely because he is a corporate officer. There must be a "demonstrated nexus between the area searched and the work space of the defendant."[8] Finding no such "nexus," the court in *Britt* adhered to the traditional rule, as expressed in *Lagow, supra,* and denied defendant standing.

As in *Britt,* we find no "nexus" in the present case to confer standing on defendants. Therefore, defendants can assert no fourth amendment objection to the use of this evidence at trial.

### V. *Oral testimony under oath by defendants Frank Cedrone, Lenora Cedrone and Dominick Galoni.*

■ Defendant Pastore refused to submit to oral examination by OCTF. He can claim no standing to object to the use of testimony taken from the other defendants.

■ The Cedrones and Galoni, who obviously have standing with respect to their own testimony so given, assert that it is inadmissible because it was obtained under the compulsion of a faulty subpoena. The government contends that before any testimony was taken, certain "purging events" occurred which eliminated the compulsory effect of the subpoena and made the testimony voluntary.

Frank Cedrone testified before OCTF on five occasions. Lenora Cedrone and Dominick Galoni each testified on one occasion. It appears that on every occasion, before the questioning began, each defendant was advised of certain rights. Each was told that he (she) could have an attorney present and could consult with him at any time; that he could refuse to answer any question asked; and that if he answered a question, his statement could be used against him in a criminal proceeding.

In *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court held that statements made by defendant Toy were inadmissible against him because they were the immediate result of unlawful

---

7. *Lagow v. United States,* 159 F.2d 245, 246 (2d Cir. 1947). See also *United States v. H. J. K. Theatre Corp.,* 236 F.2d 502 (2d Cir. 1956).

8. 508 F.2d at 1056.

police action. However, a statement made by defendant Wong Sun was admissible against him, although he too was unlawfully arrested. It appeared that several days after he was arraigned and released on his own recognizance, Wong Sun returned and made the statement in question. The Court found that Wong Sun's statement was admissible because "the connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.' *Nardone v. United States*, 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307]." [9]

A similar question arose in the case of *United States ex rel. Carter v. Mancusi*, 342 F.Supp. 1356 (S.D.N.Y.1971), *aff'd*, 460 F.2d 1406 (2d Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 451, 34 L.Ed.2d 302 (1972). Carter claimed that certain identification testimony should not have been admitted at trial because he was being detained without probable cause when he appeared in the line-up in the police station. The court rejected this argument, finding that, even if the detention were unlawful, a "purging event" had occurred which freed the identification of the "primary taint." Carter had voluntarily appeared in the line-up after being told that "he did not have to stand in the line-up if he didn't wish to." [10]

The question whether statements are voluntarily made must be answered on the facts of each case.[11] In the present case, each defendant was clearly warned, among other things, that he did not have to answer any questions, that he could stop the proceedings at any time, and that anything he said could be used against him. We must, therefore, conclude that defendants' answers to any questions were completely voluntary and not "come at" by exploiting the alleged faulty subpoenas.

Accordingly, defendants' motions to suppress evidence in these three criminal prosecutions are denied in their entirety.

So ordered.

---

9.  371 U.S. at 491, 83 S.Ct. at 419.

10.  342 F.Supp. at 1361.

11.  *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).