**UNITED STATES of America**

**v.**

**Sherman B. MALLORY et al.**

**Crim. No. Y–80–0350.**

United States District Court,
D. Maryland.

Feb. 3, 1981.

Russell T. Baker, Jr., U. S. Atty., Price O. Gielen, and Stephen J. Immelt, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

Howard L. Cardin, Baltimore, Md., for defendants.

JOSEPH H. YOUNG, District Judge.

MEMORANDUM

The defendant filed a pretrial motion to suppress the evidence derived through the operation of a Title III wiretap, 18 U.S.C. §§ 2510 *et seq.* At the pretrial suppression hearing, defendant advanced a number of theories to support his argument that the wiretap should be held invalid including the assertion that the special designation of Philip B. Heymann, Assistant Attorney General, Criminal Division, to authorize the Title III wiretap application in this case did not meet the statutory requirements under 18 U.S.C. § 2516(1) because he had not been designated by the Attorney General in office at the time of the application. The evidence at that point was unclear as to why a designation by former Attorney General Griffin B. Bell would have been attached to a wiretap application made in April, 1980, Benjamin R. Civiletti having assumed the position of Attorney General in

August, 1979. After rejecting the other theories of defendant regarding the illegality of the wiretap at issue, the Court directed the United States Attorney to inquire as to whether Attorney General Civiletti had ever executed the special designation of Philip B. Heymann, Assistant Attorney General, Criminal Division, and reserved a ruling with regard to this issue, pending the results of that evidence. The Assistant United States Attorneys reported to this Court that, upon assuming the office of Attorney General, Mr. Civiletti had *not* specifically designated Mr. Heymann to authorize applications for wiretaps under Title III but, instead, had decided to rely upon the previous designation by former Attorney General Bell. Therefore, the issue before this Court was whether the "special designation" of Mr. Heymann by former Attorney General Bell satisfied the statutory requirements under 18 U.S.C. § 2516(1) for a wiretap application which was not made until after Mr. Bell had left office. For the reasons set forth below, this Court, although skeptical about the wisdom of the action of the Department of Justice, determined that the Assistant Attorney General's authorization of the wiretap application in this case satisfied the statutory requirements and that the motion to suppress should be denied.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211–225, 18 U.S.C. §§ 2510 *et seq.* prescribes the procedure for securing judicial authority to intercept wire communications in the investigation of specified serious offenses. The particular provision at issue in this motion to suppress is 18 U.S.C. § 2516(1) which provides, in relevant part:

"(1) The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for . . . an order authorizing or approving the interception of wire or oral communications. . . ."

In *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court interpreted that specific provision quite narrowly and held "that

Congress did not intend the power to authorize wiretap applications to be exercised by any individuals other than the Attorney General or an Assistant Attorney General specially designated by him." 416 U.S. at 508, 94 S.Ct. at 1823. The Court affirmed the judgments of the Fourth Circuit Court of Appeals and the District Court for the District of Maryland that the authorization of intercept applications by the Attorney General's Executive Assistant was inconsistent with the statutory requirements of § 2516(1) and that evidence derived from such wiretaps would have to be suppressed. In light of the Supreme Court's interpretation of § 2516(1) in *Giordano*, it seems incredible that the Department of Justice apparently decided that the special designation by the former Attorney General did not have to be repeated by the incoming Attorney General, choosing instead to gamble that the old designation would be held valid by judicial authorities examining Title III intercept applications. Previous administrations had not interpreted the requirements of Title III in such a manner as Acting Attorney General Bork issued a new "special designation" for the Assistant Attorney General, Criminal Division, within three days of assuming the duties of Acting Attorney General in 1973. *See United States v. Guzek*, 527 F.2d 552 (8th Cir. 1975); *United States v. McCoy*, 515 F.2d 962 (5th Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 795, 46 L.Ed.2d 649 (1976); *United States v. Pellicci*, 504 F.2d 1106 (1st Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975).

In support of its position that no new special designation was required when Attorney General Civiletti assumed that office, the government cited two cases standing for the proposition that rules and orders of one Attorney General continue to govern the Department of Justice until they are changed or altered, notwithstanding the advent of new Attorney Generals. *In Re Weir*, 520 F.2d 662 (9th Cir. 1975); *United States v. Morton Salt Co.*, 216 F.Supp. 250 (D.Minn.1962), *aff'd*, 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1963). The decision of

the Ninth Circuit involved the authorization by the Attorney General of a grant of immunity under 18 U.S.C. § 6003 and that Court rejected the claim of the witness that a change in administrations during his appeal of an order to testify required the Department of Justice to review its initial decision. However, in contrast to the guidelines for wiretap authorizations in 18 U.S.C. § 2516(1), that decision involved administrative procedures without direct policy implications:

"The guidelines on which appellants rely are directed to the handling of requests by United States Attorneys within the Department of Justice for permission to seek orders granting immunity. They are not directed to the procedural or substantive rights of prospective witnesses." 520 F.2d at 667.

Similarly, the decision in *United States v. Morton Salt Co.*, involved the authority of attorneys from the Antitrust Division of the Department of Justice to appear before a grand jury in St. Paul, Minnesota. The defendants asserted that the authority of the Justice Department attorneys to act in the District of Minnesota came from a previous officer of the Department and not from an officer of the Department during the period when these assistants were before the grand jury. 216 F.Supp. at 255. The Court, in broad dicta, rejected that assertion:

"This contention is clearly untenable in that it is the authority from the duly designated official in the office of the Attorney General which the statute requires, and if that individual thereafter resigns, dies, or is otherwise separate from his office, the authority to act under the authorization is not terminated. In other words, when a designated official acts within the scope of his authority, the authorization must continue until it is revoked or is otherwise terminated. If this were not true, a change of administration or resignation from office by the official who acted within his authority when the designation was made would create a chaotic condition in the administration of the affairs of the Department of Justice." 216 F.Supp. at 256.

As a general rule, this Court would not quarrel with that statement of administrative continuity. All decisions or delegations affecting ongoing operations of the Department need not be expressly ratified by an incoming Attorney General, particularly when there has been no change of administrations and the person filling the position has been promoted from within the Department itself. However, authorization for wiretap applications under Title III are in a special category of Departmental decisions which are strictly limited by the terms of the statutory scheme and judicial interpretations thereof. The purpose of the statute and its legislative history clearly support a narrow interpretation of the delegation of that statutory authorization. *See Giordano, supra* 416 U.S. at 514–523, 94 S.Ct. at 1826–1830. Thus, the decisions cited by the government, *In Re Weir* and *Morton Salt Co.*, while instructive on the general question of administrative continuity, are not particularly helpful with regard to the issue at hand.

This Court is aware of no judicial decision directly addressing the specific issue before this Court. However, on the same day that the Supreme Court released the decision in *Giordano, supra*, it decided another Title III case which provides some guidance with regard to the legality of the Justice Department's actions in the present case. *United States v. Chavez*, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). While the decision in *Giordano* has mandated suppression of evidence derived from a wiretap for failure of the Department of Justice to comply strictly with the requirements of Title III, the decision in *Chavez* indicated that not all failures to act in accordance with the letter of the statute would result in such a drastic sanction as suppression. In *Chavez*, the Attorney General has actually authorized the application for the wiretap but the application itself incorrectly identified an Assistant Attorney General as the individual who had given the authorization. The Court recognized the defect in the application but held that such a deficiency did not

warrant the suppression of evidence gathered from the wiretap. 416 U.S. at 571, 94 S.Ct. at 1854. While not condoning the actions of the Department of Justice officials, the Court held that the misidentification of the officer authorizing the wiretap application did not affect the fulfillment of any of the reviewing or approval functions required by Congress, which were the primary reasons for identification requirement in the statute. 18 U.S.C. §§ 2518(1)(a) and (4)(d).

Since the decisions in *Giordano* and *Chavez*, several Courts of Appeals have recognized that the proper emphasis in deciding the legality of an authorization or special designation under 18 U.S.C. § 2516(1) is whether or not the procedures followed in authorizing an application for a wiretap conformed to the statutory intent that such authorizations be narrowly confined to a small category of Justice Department officials responsive to the political process. Thus, the Courts have upheld special designations referring to the Assistant Attorney General, Criminal Division, even where such designations failed to refer specifically to the name of the particular individual occupying that office. *United States v. Votteller*, 544 F.2d 1355, 1358 (6th Cir. 1976); *United States v. Pellicci*, 504 F.2d 1106 (1st Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975). The focus in both of these decisions was upon the intention of the Attorney General to specially designate an individual whose function as an authorizing official would not run afoul of the legislative intent in Title III, as recognized in *Giordano*. An even easier case was presented to the Court in *United States v. DiMuro*, 540 F.2d 503, 508 (1st Cir. 1976) where the Attorney General had "specially delegated" an Assistant Attorney General to authorize wiretap applications. The Court rejected the contention that such a choice of language ("delegate" instead of "designate") amounted to an illegal transfer of authority in that the person who authorized the wiretap application was clearly one contemplated to exercise such authority under the statute and thus the "delegation" did not contravene the legislative intent underlying Title III.

Unfortunately, the present case is not as clear as any of the cases cited above. Those cases not involving Title III wiretap applications are clearly distinguishable on the basis of the legislative intent of Title III, as interpreted in *Giordano*. Moreover, the evidence in this case does not so clearly support the intention of the Attorney General to authorize wiretap applications under § 2516(1), as did the evidence in the Court of Appeals decisions cited above. However, neither is the situation here so obviously contrary to the legislative intent of Title III as the factual situation in *Giordano* where an Executive Assistant to the Attorney General, an official nowhere mentioned in the statute, had authorized the applications. In the present case, there is no allegation that the official who authorized the application, Assistant Attorney General, Criminal Division, Philip Heymann, had not been specially designated by the Attorney General who held office prior to Mr. Civiletti. Nor is there any allegation that he did not occupy a position within the narrow category of positions which could validly be specially designated under § 2516(1). Furthermore, the evidence indicates that the Attorney General at the time of the wiretap application actually intended to specially designate Mr. Heymann to authorize such applications. Mr. Civiletti had occupied the position of Deputy Attorney General prior to becoming Attorney General and presumably knew of Mr. Heymann's special designation by Attorney General Bell. When Mr. Civiletti became Attorney General, he operated under the impression, whether well-founded or not, that actions of his predecessor, including those with regard to special designations for Title III wiretap application authorizations, would continue in effect unless changed by him. Finally, it should be noted that the change in office did not take place as the result of a change in administrations but, rather simply as the result of Attorney General Bell's resignation.

Under all these circumstances, this Court does not feel that the legislative intent of

Title III has been abridged in such a manner as to warrant suppression of the evidence in this case. The motivations for the narrow requirements of § 2516(1), including the limitation of authority to apply for wiretaps to those responsive to the political process, *Giordano*, 416 U.S. at 520, 94 S.Ct. at 1829, have not been thwarted by the procedures followed in this case. However, in deciding this motion to suppress in favor of the government, it is appropriate to quote the following language of the Supreme Court in *Chavez, supra*:

"Though we deem this result to be the correct one under the suppression provisions of Title III, we also deem it appropriate to suggest that strict adherence by the Government to the provisions of Title III would nonetheless be more in keeping with the responsibilities Congress has imposed upon it when authority to engage in wiretapping or electronic surveillance is sought." 416 U.S. at 580, 94 S.Ct. at 1858.