James Wintfored REWIS, Appellant,

v.

UNITED STATES of America, Appellee.

Mary Lee WILLIAMS, Appellant,

v.

UNITED STATES of America, Appellee.

Robert Lee FULLER, Sr., and Oliver Louis Nightengale, Sr., Appellants,

v.

UNITED STATES of America, Appellee.

Nos. 25625, 25919, 25631.

United States Court of Appeals Fifth Circuit.

Dec. 5, 1969.

As Amended Dec. 24, 1969.

Samuel S. Jacobson, and Eugene Loftin, Datz & Jacobson, Jacksonville, Fla., for appellant.

Joseph W. Hatchett, Asst. U. S. Atty., Jacksonville, Fla., Milton J. Carp, Charles Ruff, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., for appellees.

Before TUTTLE, WISDOM and BELL, Circuit Judges.

TUTTLE, Circuit Judge:

This is a consolidated appeal from three separate convictions in the United States District Court for the Middle District of Florida. The appellants were tried before a jury and convicted on vari-

ous counts of violating 18 U.S.C.A. § 1952.[1]

The appellants, James Rewis, Mary Lee Williams, Robert Lee Fuller and Oliver Nightengale, were indicted with seven other defendants in connection with an alleged numbers operation, which, without dispute, was being conducted at the home of Mary Lee Williams in the town of Yulee, Florida, a small community approximately fifteen miles south of the Georgia-Florida state line. Judgment of acquittal was entered by the trial court as to four defendants and the jury thereafter acquitted two other defendants, but returned guilty verdicts against all of the appellants on various counts of violating this section of the Federal Criminal Code. The government argues that Rewis was the leader of the operation which was being conducted at Mary Lee Williams' home and that the other appellants, Fuller and Nightengale, were connected with the operation as workers or as players. Only Rewis and Williams were Florida residents. Fuller, Nightengale and the other acquitted defendants were Georgia residents. The government's theory was that Fuller and Nightengale actually travelled in interstate commerce with the intent to violate the Florida statute, Section 849.09, F.S.A. outlawing the promoting or conducting of any lottery; that they would be guilty whether they used these interstate facilities for the purpose of coming into Florida and placing bets themselves at the Williams' residence, or were acting as employees of Williams and/or Rewis in the conduct of the operation. The government contends that in either event they would be guilty of the substantive counts for which they were convicted, even though they were both acquitted of the conspiracy count.

The government further contends that whether or not Fuller and Nightengale were proved to have been co-conspirators, nevertheless the conspiracy and substantive charges against Rewis and Williams would stand, because they were shown by ample evidence to have caused Fuller and Nightengale, as well as other unnamed or named travelers from Georgia to patronize the establishment for gambling purposes.

■ The case against Fuller and Nightengale is very thin, indeed, if it must, as we think it does, depend upon a showing that they were other than bettors themselves.

■ Whether the reading of the federal statute be casual or intense, it appears that it is not aimed at making a federal crime out of a person's crossing a state line for the purpose of placing a bet, if the placing of such a bet is a crime in the state which he enters. If appellants Fuller and Nightengale are to come within the coverage of Section 1952(a) (3), it would require a broad interpretation of "carry on" or "facilitate." The language of the statute appears clearly to be aimed at those things or people who aid, help or assist the pro-

1. § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises.
(a) Whoever travels in interstate or foreign commerce or uses any facility or foreign commerce, including the mail, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2) and (3) shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery or arson in violation of the laws of the States in which committed or of the United States.
(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury.

motion of, or making easier or possible, the illegal actions mentioned in paragraph three. We think that, at the least, the word "facilitate" means, as stated by the Court of Appeals for the Seventh Circuit, in United States v. Miller, 379 F.2d 483, at 486, "to make easy or less difficult." We do not believe that the patronizing by interstate gamblers of a gambling establishment fits within the terminology of "promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on of any unlawful activity."

It thus becomes unnecessary for us to determine whether the Florida statute which the government contends these two appellants crossed state lines to violate is itself violated by a person's participating as a bettor as distinguished from a person acting in a proprietary manner.

 We conclude that the convictions against Fuller and Nightengale cannot stand because there was insufficient evidence to show that they were other than participators in placing bets at the Williams establishment, and, as such, they could not have been found by the jury to have been guilty of any overt act prohibited by the federal statute.

 What has been said thus far does not apply to Rewis and Williams. It is not in dispute that these two appellants were the actual proprietors of a numbers game which was frequented by patrons who crossed the Georgia state line to reach their place. Moreover, there is actual evidence of the participation in the gambling taking place at the Williams' residence by these two particular non-residents, Fuller and Nightengale. There is no merit in the argument, made on behalf of Rewis and Williams, that because we find Fuller and Nightengale were not members of the conspiracy *their* conviction as conspirators should be set aside. The jury verdict need not be construed as holding that Fuller and Nightengale did not utilize the facilities of interstate travel to patronize the gambling establishment operated by these appellants.

Appellants further contend, however, that neither Rewis nor Williams was shown ever to have crossed any state lines in connection with their undoubted violation of the Florida anti-gambling statute. We must thus, therefore, determine whether their conduct in holding themselves out as a place where interstate travelers could place bets was itself a violation of subsection (3) of Section 1952(a), prohibiting "promoting, managing, establishing, carrying on or facilitating the promotion, management, establishment or carrying on" an activity prohibited by the Florida criminal statutes.

Appellants argue strenuously that the acquittal of the bettor defendants and the failure of the jury to convict Fuller and Nightengale of the conspiracy count, makes impossible a conviction of Rewis and Mary Lee Williams of either the conspiracy to violate the federal statute or the overt act violations for which they were convicted. This, appellants say, follows because this being an interstate conspiracy there must be proof of an interstate overt act to sustain it. We think, to the contrary, that it is enough to point out that the jury's finding that none of the Georgia defendants joined in the conspiracy with Rewis and Williams is not inconsistent with the jury's verdict that Rewis and Williams agreed to operate a lottery which would be "facilitated" by being patronized by persons coming to it from outside of the state of Florida. Acquittal of those charged with traveling from Georgia does not negate the fact of their travel. It merely negates the mental element of intent to join a conspiracy which was a prerequisite to a conviction on that count. The acquittal of those traveling from Georgia on the substantive counts also does not negate the fact of their traveling and placing bets; it merely negates the fact that such travel and placing bets by these persons did not amount to a violation of Section 1952(a) (3).

 The record amply supports the fact that Rewis and Williams, as oper-

ators, managers and proprietors of the gambling establishment, were guilty of the conspiracy as charged, and of the overt acts as charged as separate offenses.

■ Basically what we decide is that the operation by Rewis and Williams of the gambling establishment with full knowledge that it was being maintained largely by the attraction of interstate customers, was sufficient to warrant the jury's finding them guilty of a conspiracy to conduct such an operation and also to find them guilty of the specific charges of substantive acts in violation of the statute which produced their convictions and sentences.

■ Of course, the government concedes that the conviction on the charge contained in Counts Two and Three as to the wagering stamp tax must fall in light of the Supreme Court's decision in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). We do not think that the reversal of the conviction on these charges by reason of the Supreme Court's invalidating these provisions of the statute requires a reversal and new trial on the other counts. See United States v. Kelley, 2 Cir., 1968, 395 F.2d 727, cert. denied 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376. It appears that the only proof adduced on Counts Two and Three in this case which was not admissible on the other counts as well was the testimony offered to show appellants' failure to register or pay the wagering tax. There was ample proof to show that Rewis and Williams were engaged in the business of gambling, and it is difficult to understand how any prejudice could have resulted from this evidence.

The appellants complain of other matters which the court has carefully considered, but find to be without merit. We have carefully considered each of them and find that they are either without substance or that no prejudice could have resulted from the action taken by the trial court.

The one point of significance on this appeal is the question whether the attraction by Rewis and Williams of interstate gamblers to their place near the state boundary comes within the definition of the crime described in Section 1952. This question is not entirely free from doubt, but is solely a matter of construction of the statute. We conclude that the conduct of these appellants caused the interstate travel by those who placed bets with them, and thus came within the prohibition of the statute. While not entirely analogous, the following cases may be cited as giving some support to this conclusion: United States v. Barrow, 212 F.Supp. 837, aff'd 363 F.2d 62 (3 Cir., 1964); United States v. Kelley, 2 Cir., 1968, 395 F.2d 727, cert. denied 393 U.S. 963, 89 S.Ct. 391, 21 L.Ed.2d 376. We think that the gambler operators of the gambling establishment are responsible, under the terms of this statute, for the use of interstate facilities, by way of interstate travel, of those whose participation is vital to the success of his business.

The judgments against Rewis and Williams are affirmed. The judgments of conviction and sentence of Fuller and Nightengale are reversed, and these cases are remanded to the district court for the entry of a judgment of acquittal.