**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Norwood HEDGE and Marvin Thomas
Stark, Defendants-Appellants.**

**No. 27654.**

United States Court of Appeals,
Fifth Circuit.

June 9, 1972.

Rehearing Denied July 3, 1972.

John M. Sekul, Biloxi, Miss., for Hedge.

James A. Moore, Houston, Tex., for Stark.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Owen A. Neff, Asst. U. S. Atty., New Orleans, La., Jill Wine Vollner, Atty., U. S. Dept. of Justice, Washington, D. C., for United States.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Appellants, Norwood Hedge and Marvin Thomas Stark, appeal from jury convictions for violating and conspiring to violate 18 U.S.C.A. § 1952 (1970).[1] The indictment charged that appellants agreed to ship and caused to be shipped

---

1. (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the

100 pairs of honest dice and 12 pairs of crooked dice by mail from Las Vegas, Nevada to Gulfport, Mississippi with the intent to promote a business involving gambling. The adduced evidence indicated that appellants rented space for a gaming room in the restaurant of J. L. Porter from about May 3, 1965 to June 27, 1965. On June 7, Stark telephoned a dice manufacturing company, for whom he worked as a salesman, and ordered the above mentioned dice. He directed that they be mailed to J. L. Porter in Gulfport. The 100 pairs of honest dice were separately packaged from the 12 pairs of crooked dice, and then both were mailed C.O.D. These packages arrived in Gulfport on June 11. Porter testified that at the request of appellants he went to the post office to pick up the packages, but after discovering the cost of the C.O.D. packages, he refused to take them. The packages were ultimately returned unclaimed to Las Vegas where the FBI later seized them.

■ When this case was first argued in this Court, appellants urged that their due process and equal protection rights had been violated because they were not given the benefit of a transcript of the proceedings concerning certain pre-trial motions. It turned out that the court reporter's notes and tapes had been stolen. We requested that an attempt be made to reconstruct the transcript pursuant to F.R.A.P. 10(c). Because of disagreement between the parties, the district court proceeded under Rule 10(e) to reconstruct the transcript and in addition, filed findings of fact. That court found that reconstruction was adequate and made from the best available means and also that the reconstruction was sufficient to allow it to supply the omission and correct the record under Rule 10(e). Our review indicates that the district court did not err in any of its conclusions on this matter.

■ The appellants attack the prejudicial superfluity of the indictment and the evidence eventuating therefrom because the Government chose to differentiate between 100 pairs of "honest dice" and 12 pairs of "crooked dice". Appellants argue that the indictment would have been sufficient had it just mentioned 112 pairs of dice, and thus the inclusion was surplusage and of course prejudicial. But we demur as to both points. The allegation and proof was essential to prove that the dice seized in Las Vegas were the same dice that Stark had ordered on June 7. In addition, we can discern no specific prejudice flowing from this admittedly accurate factual description. All gambling is illegal in Mississippi whether done with honest or dishonest paraphernalia.

■ Appellants complain that the Government wrongly subpoenaed four Government witnesses to appear for interviews at the office of the United States Attorney on the Sunday before trial. Under Fed.R.Crim.P. 17(a),[2] the appellants contend that a subpoena is only returnable at the place of trial.

State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury.

2. (a) *For Attendance of Witnesses; Form; Issuance.*
A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a commissioner in a proceeding before him, but it need not be under the seal of the court.

While we agree with the appellants' interpretation of the Rule, *see* United States v. Bowens, 318 F.2d 828 (7th Cir. 1963); United States v. Standard Oil Company, 316 F.2d 884 (7th Cir. 1963); United States v. Polizzi, 323 F.Supp. 222 (C.D.Cal.1971), we do not agree that reversal is required, for we cannot discern any prejudice arising from this irregularity in the case at bar. This court has previously turned aside a due process challenge against this same procedure. Buie v. United States, 420 F.2d 1207 (5th Cir. 1969).

■ An alleged co-conspirator, Sullivan, who had earlier pled guilty, testified as to orders of dice made by Stark on May 17, several weeks before the date the conspiracy allegedly began. Sullivan was the owner of the dice manufacturing company. He identified the order forms for the May 17 transaction, but he did not prepare them. Appellants argue first that his testimony was hearsay, but this is without merit because the order forms and the testimony concerning them properly qualified under the business records exception, 28 U.S.C.A. § 1732 (1966). Sullivan was the custodian of the records, and he testified that the forms were prepared in the regular course of business. *See* Gilstrap v. United States, 389 F.2d 6, 10 (5th Cir. 1968).

■ Next the appellants contend that since the event took place prior to the date of the alleged commencement of the conspiracy the testimony was inadmissible on the ground that it was evidence of another crime. In United States v. Johnson, 453 F.2d 1195 (5th Cir. 1972), we delineated the exceptions to the general rule that evidence of other crimes are not admissible. We hold that the proof evinced a consistent pattern or scheme and was thus admissible. *See also* Gilstrap v. United States, *supra*, 389 F.2d at 9.

■ Finally as to this evidence, the appellants complain that the testimony of the alleged co-conspirator, Sullivan, should not have been admitted because the Government did not first present proof that a conspiracy actually existed. The rule that the appellants cite, however, is only applicable to the admission of the extrajudicial statements of co-conspirators, not their in-court testimony. *See* Orser v. United States, 362 F.2d 580, 585–586 (5th Cir. 1966).

■■ There were three elements of a violation of Section 1952 [3] to be proven in this case. It must have been shown that the appellants used the mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate any unlawful activity and thereafter performed or attempted to perform the promotion, management, etc. of the unlawful activity. *See* United States v. Gebhart, 441 F.2d 1261, 1263 (6th Cir. 1971); Spinelli v. United States, 382 F.2d 871, 893 (8th Cir. en banc 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Appellants launch a three-pronged assault. First they argue that they did not use the mails. We disagree. It is sufficient that they took some affirmative action that caused the mails to be utilized. Secondly, they contend that they had no intent to promote, manage, etc. the unlawful activity of gambling in Mississippi in violation of 1942 Miss. Code Ann. §§ 2190, 2192. The evidence belies this contention.

■ Finally, the contention is advanced that there was no "thereafter" act because they did not receive the dice. The Government reasons that there need be no relationship shown between the use of the mails and the "thereafter" act except to the extent that both must facilitate the same unlawful activity. We agree. *See* United States v. Botticello, 422 F.2d 832 (2d Cir. 1970); Spinelli v. United States, *supra*, 382 F.2d at 893–894. Certainly the statute cannot be so restrictively read as to bar a conviction unless the appellants used the actual dice in question in their gambling enterprise.

3. See n. 1 above.

The appellants ordered these dice by use of the mails with intent to carry on a gambling business, and after utilization of the mails, the proof shows that they continued to carry on the same gambling business. That is sufficient for conviction.

The judgment is

Affirmed.