UNITED STATES of America, Plaintiff-Appellee,

v.

Vincent R. PERRIN, Jr., David L. Levy and Duffy J. LaFont, Jr., Defendants-Appellants.

No. 76–3926.

United States Court of Appeals, Fifth Circuit.

Sept. 20, 1978.

Rehearing and Rehearing En Banc Denied Nov. 15, 1978.

Perrin C. Butler, New Orleans, La., for Perrin.

John T. Mulvehill, FPD, Henry L. Klein, New Orleans, La., for LaFont.

Vincent R. Perrin, Jr., pro se.

Russell Schonekas, New Orleans, La. (Court-appointed), for Levy.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New

Orleans, La., K. Eric Gisleson, Deputy Chief, Public Integrity Section, Crim. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WISDOM, THORNBERRY and RUBIN, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants, Vincent Perrin, Jr., David Levy, and Duffy LaFont, Jr., appeal from jury convictions for violating and conspiring to violate the Travel Act.[1] The indictment charged that the appellants [2] used interstate facilities with the intent to promote a commercial bribery scheme in violation of the laws of the State of Louisiana.[3] The proof adduced at trial demonstrated that appellant LaFont approached an employee of the Petty-Ray Geophysical Company, Roger Willis, and proposed that Willis steal from his employer certain seismic ex-

1. 18 U.S.C. § 1952 reads in pertinent part:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury. As amended Pub.L. 91–513, Title II, § 701(i)(2), Oct. 27, 1970, 84 Stat. 1282.

2. Along with the appellants, Albert Izuel and Jim Haddox were also charged in the indictment. Izuel and Haddox were severed by the trial court on the second day of trial and the charges against them were ultimately dismissed.

3. Louisiana's Commercial Bribery Statute reads:

Commercial bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any private agent, employee, or fiduciary, without the knowledge and consent of the principal or employer, with the intent to influence such agent's, employee's, or fiduciary's action in relation to the principal's or employer's affairs.

The agent's, employee's, or fiduciary's acceptance of or offer to accept, directly or indirectly, anything of apparent present or prospective value under such circumstances shall also constitute commercial bribery.

. . . . .

Whoever commits the crime of commercial bribery shall be fined not more than five hundred dollars, or be imprisoned for not more than six months, or both.

14 La.R.S. 73

ploration charts. In return for the theft, Willis was to receive a percentage of the profits of a corporation specifically organized by appellants Levy and LaFont to exploit the stolen data. Appellant Perrin, a consulting geologist, was to interpret and analyze the data stolen from Petty-Ray.

All the defendants were found guilty of the conspiracy count. Perrin was also found guilty of two substantive counts charged in the indictment. Levy and LaFont were adjudged guilty of four substantive violations of the Act. Perrin received a one-year suspended sentence on each count. Defendants LaFont and Levy received a two-year sentence for each conviction. All of the sentences are to run concurrently. Since no appellant challenges the sufficiency of the evidence, it is unnecessary to burden this opinion with further factual details.

### I.

In their first point of error, the appellants contend that commercial bribery as defined in 14 La.R.S. 73 is not "bribery" within the meaning of the Travel Act. While this is a question of first impression in this circuit, sister circuits have split over the issue. In *United States v. Brecht*, 540 F.2d 45 (2 Cir. 1976) the Second Circuit held that Congress did not intend to include commercial bribery within the meaning of "bribery" as used in the Travel Act. The Second Circuit noted that the legislative history of the Travel Act shows that Congress enacted the Travel Act "for the purpose of punishing interstate travel in aid of racketeering enterprises engaged in by organized crime." 540 F.2d at 49. Furthermore, the court observed that commercial bribery "is not a feature of organized crime and was not subsumed under the traditional

offense of bribery." *Id.* at 50. In *United States v. Pomponio*, 511 F.2d 953 (4 Cir. 1975), *cert. denied*, 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105, the Fourth Circuit reached the opposite conclusion. In *Pomponio*, the court held that the term "bribery" as used in the Travel Act includes commercial bribery. In reaching its conclusion, the Fourth Circuit noted that all bribery involves moral turpitude and that in *United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534, 539, 21 L.Ed.2d 487 (1969), the Supreme Court cautioned against an unnaturally narrow reading of the terms of the Travel Act. 511 F.2d at 956–957.

For the reasons enumerated below, we believe that *Pomponio* is the correct reading of the Travel Act and the term "bribery" is a generic one not limited to its meaning in common law. First, we recognize as did the Second Circuit in *Brecht*, that the primary impetus in Congress for the Travel Act was the fight against organized crime. We cannot imply from this recognition, however, that only crimes "typically associated with the underworld" are the ones outlawed by the Travel Act. Such a limitation on the Travel Act would be tantamount to implying an additional element to the Act.[4] The Supreme Court has recently held that the Hobbs Act, 18 U.S.C. § 1951, does not contain a "racketeering" element. *United States v. Culbert*, 435 U.S 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978). Similarly, we find that it is not a requirement of the Travel Act that the underlying crime be one typically associated with the underworld or organized crime. We genuinely doubt our expertise to make such a determination.[5]

Furthermore, common experience has taught us that organized crime does not

---

4. At oral argument, the defendants urged that the Travel Act applied only to organized crime and that the single instant of commercial bribery in this case did not amount to organized crime. Membership in organized crime is not an element of the offense. *United States v. Hedge*, 462 F.2d 220 (5 Cir. 1972). *See also United States v. Polizzi*, 500 F.2d 856 (9 Cir. 1974), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Marshall v. United*

*States*, 355 F.2d 999 (9 Cir. 1966), *cert. denied*, 385 U.S. 815, 87 S.Ct. 34, 17 L.Ed.2d 54 (1966).

5. Alternately, one could argue that there is no faster way to make a certain crime one commonly found in the repartee of the underworld than to make a judicial pronouncement that the crime is not one used commonly by the underworld.

limit bribery to bribery of public officials. Few will ever forget the most notorious commercial bribe in American history—the bribing of the 1919 Chicago White Sox baseball team. In that sad episode, Abe Attell, supposedly an employee of the New York gambler, Arnold Rothstein, bribed eight players of the Chicago White Sox to throw the first and second games of the 1919 World Series to the Cincinnati Reds. Attell paid Eddie Cicotte, Oscar "Happy" Felsch, Chick Gandil, "Shoeless" Joe Jackson, Freddy McMullin, Charles "Swede" Risberg, George "Buck" Weaver, and Claude Williams about $70,000 for their participation in the scheme.[6] See E. Asinof, Eight Men Out (1963).

Second, it is clear that the Congress itself has not limited bribery concepts to common law definitions. In various places in the United States Code, Congress has outlawed bribery of public officials,[7] bribery of witnesses,[8] bribery of athletes,[9] bribery of bank officers,[10] bribery of agents and employees of carriers by rail,[11] bribery of licensed classifiers of cotton or any grain,[12] and bribery in connection with quiz shows.[13] Certainly, Congress, in writing the Travel Act, did not intend to outlaw only the bribery of public officials while simultaneously prohibiting the disregard of a fiduciary duty in a myriad of other circumstances.

Last, we agree with the Fourth Circuit that United States v. Nardello, supra, presents a ready parallel to the case at bar. In Nardello, the defendant was charged with a scheme involving the unlawful activity of blackmail in violation of the laws of Pennsylvania. 89 S.Ct. at 535. Since the Travel Act specifically outlaws only "extor-

tion, bribery, or arson in violation of the laws of the State in which committed or of the United States," Nardello argued that blackmail in violation of State law was not within the ambit of the Act.[14] Furthermore, Nardello urged that in using the term extortion, Congress intended only its common law meaning of acts by a public official. Id. at 538. In rejecting Nardello's arguments the Court stated:

> In light of the scope of the congressional purpose we decline to give the term "extortion" an unnaturally narrow reading, cf. United States v. Fabrizio, 385 U.S. 263, 266–267, 87 S.Ct. 457, 459, 17 L.Ed.2d 351 (1966), and thus conclude that the acts for which appellees have been indicted fall within the generic term extortion as used in the Travel Act.

89 S.Ct. at 539.

Applying these concepts to the instant case, we believe that Congress intended the term "bribery" to be used in its generic sense and not be limited to its common law meaning. See also United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) (refusing to define "stolen" as used in the Dyer Act, 18 U.S.C. § 2312, as meaning common law larceny). We believe it would be incongruous to read the term "extortion" in its generic sense while reading the term "bribery" in the literal common law sense. We therefore conclude that a Travel Act violation may be based on commercial bribery in violation of a state's commercial bribery statute.

## II.

In their next point of error, the appellants contend that the Louisiana Com-

---

6. After the bribe was discovered a small boy is said to have approached "Shoeless" Joe Jackson and exclaimed, "Say it ain't so, Joe."
 Chicago Herald & Examiner, September 30, 1920.

7. 18 U.S.C. § 201

8. 18 U.S.C. § 201

9. 18 U.S.C. § 224

10. 18 U.S.C. § 215

11. 49 U.S.C. § 1(17)

12. 7 U.S.C. §§ 60, 85

13. 47 U.S.C. § 509

14. Nardello could not have been charged under Pennsylvania extortion statute because Pennsylvania defined extortion as did the common law, i. e., a public official who under color of office obtains the property of another not due either to the office or the official.
 89 S.Ct. at 536.

mercial Bribery Statute is unconstitutional in that it is vague and overly broad. While the Louisiana Supreme Court has not passed on these arguments, other courts have unanimously rejected constitutional attacks on similar commercial bribery statutes. *See State v. Brewer*, 258 N.C. 533, 129 S.E.2d 262 (1963), *app. dismissed*, 375 U.S. 9, 84 S.Ct. 72, 11 L.Ed.2d 40 (1963); *People v. Nankervis*, 330 Mich. 17, 46 N.W.2d 592 (1951); *People v. Davis*, 33 N.Y. Cr.R. 460, 160 N.Y.S. 769 (1915); Annotation, Validity and Construction of Statutes Punishing Commercial Bribery, 1 A.L.R.3d 1350, 1357–59. Since the Louisiana Commercial Bribery Statute prohibits behavior about which "men of common intelligence" need not guess, the statute is not unconstitutionally vague. *Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Baggett v. Bullitt*, 377 U.S. 360, 367, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Furthermore, the instant scheme was so far within the core meaning of the statute, we need not consider whether the statute is overly broad.

### III.

The appellants contend that the interstate nexus supplied by their use of interstate facilities was isolated, minimal, inconsequential, and nonessential to the commercial bribery scheme and insufficient to establish jurisdiction under the Travel Act.

The indictment charged in Count Two that the appellants used interstate facilities to promote their commercial bribery scheme when Willis, on the instructions of Levy, LaFont, and Perrin, called Gravity Map Service in Richmond, Texas, in order to purchase corresponding gravity maps for the stolen seismic data. Gravity Map Service, sent appropriate order forms to Willis via interstate bus. Count Three of the indictment charged that David Levy made a second interstate phone call to Gravity Map Service in Texas for the purpose of ordering corresponding gravity maps.[15]

The appellants point to *United States v. Altobella*, 442 F.2d 310 (7 Cir. 1971) and *United States v. Isaacs*, 493 F.2d 1124 (7 Cir. 1974), *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146, in support of their contention that the interstate contacts were insufficient to establish jurisdiction under the Travel Act.[16] In *Altobella* and *Isaacs*, the Seventh Circuit held that the interstate travel of a bribery check was an insufficient interstate nexus under the Travel Act to support jurisdiction.

The government argues that in *Isaacs* and *Altobella* the interstate nature of the checks' travels was not essential to the extortion scheme while in the instant case the obtaining of gravity maps was an essential element of the bribery scheme. The government urges that without the corresponding gravity maps, Perrin, the geologist, would have been unable to analyze the stolen data and the corporation formed to exploit the data would not have made a profit and, ultimately, the bribe to Willis could not have been paid. The appellants, in turn, hotly contest that the gravity maps were an essential part of the scheme. At one point in his brief, Perrin states, "Sight must not be lost of the fact that the gravity maps were not an essential aspect of the completed bribery scheme. Gravity maps are but one aspect of the base materials needed by Perrin or any other consulting geologist in the performance of his duties. . . . "

We simply need not determine if the gravity maps were an essential part of the scheme. Since it is undisputed by the

---

**15.** We will not discuss the use of interstate facilities charged in Counts Five and Six since only Levy and LaFont were convicted under these counts.

**16.** We note that the Seventh Circuit in *Altobella* and *Isaacs* has read the Travel Act more narrowly than the Fourth Circuit in *United* *States v. LeFaivre*, 507 F.2d 1288 (4 Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975) and the Sixth Circuit in *United States v. Eisner*, 533 F.2d 987, 992 (1976). Since the precise question is not before us, we decline to express an opinion as to the correct reading.

appellants that the gravity maps would have been used to exploit the stolen data, the requirements for jurisdiction under the Travel Act are met. There is no requirement that the use of interstate facilities be essential to the scheme: it is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity. *Rewis v. United States*, 418 F.2d 1218, 1221 (5 Cir. 1969), *reversed on other grounds*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *United States v. Miller*, 379 F.2d 483, 486 (7 Cir. 1967), *cert. denied*, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967). Levy's telephone call to Richmond, Texas was sufficient use of interstate facilities to support conviction under Count Three. Moreover, the evidence supports Travel Act jurisdiction under Count Two since the appellants directed Willis to make an interstate phone call and it is sufficient that the appellants caused the use of interstate facilities. *United States v. Hedge*, 462 F.2d 220, 223 (5 Cir. 1972).

### IV.

▉ In their next point of error, the appellants contend that even if jurisdiction under the Travel Act is appropriate, the jurisdiction was improperly manufactured by the government. The appellants rely on *United States v. Archer*, 486 F.2d 670 (2 Cir. 1973). Before we can begin any meaningful discussion of *Archer*, we need to consider the explanation given by the *Archer* court itself:

> While the Government professes alarm at the precedential effect of our decision, we in fact went no further than to hold that when the federal element in a prosecution under the Travel Act is furnished solely by undercover agents, a stricter standard is applicable than when the interstate or foreign activities are those of the defendants themselves and that this was not met here. We adhere to that holding and leave the task of further line-drawing to the future.

486 F.2d 685–86.

Under this explanation it would be enough to note that in the instant case the interstate nexus alleged in Count Three of the indictment was supplied by a phone call made by appellant Levy, not a government agent.

We have decided, however, to examine the appellants' argument in a broader scope to determine if the government improperly supplied the interstate element in this prosecution. First, we cannot condemn the fact that the government informer was involved in the interstate element of the crime. *Cf. United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Certainly, Willis played the part of a willing co-conspirator and as such he would be expected to be involved in all aspects of the bribery scheme. This is not to say, however, that Willis at the behest of the government could unilaterally supply the interstate element to a local bribery scheme and thereby transform the bribery scheme into a Travel Act violation. For example, Willis could not at the government's direction cross the Sabine River merely to call one of the co-conspirators in New Orleans, Louisiana.

In the instant case, it is clear that the government reminded Willis to be a follower and not a leader in the scheme. Furthermore, the evidence at trial made clear that Perrin, as the consulting geologist, selected the out of state source for the gravity maps. Perrin insists that the government had pre-marked the geological directory so as to force Perrin into selecting an out of state source. The government replies that no particular supplier was pre-marked in the directory. Whatever the merits of this tangential dispute, the evidence makes clear that Perrin knew the significance of selecting an out of state source for the gravity maps and that he fully appreciated the fact that an out of state supplier was less likely to notice leasing activity in northern Louisiana.

We do not believe that the government acted improperly by artificially supplying the interstate nexus to a local crime in order to make out the elements of a Travel Act violation.

### V.

Next, the appellants contend that the trial judge erred in not granting the appel-

lants' requested instructions on entrapment. Traditionally, entrapment exists "when the criminal design originated with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute," *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932). *See also Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell, supra; Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The appellants do not complain of the trial judge's failure to give the traditional charge, nor could they since it is clear that the government did not know of the scheme until after Willis had been approached with the bribery offer. Instead, the appellants insist that they are entitled to an entrapment charge based on *United States v. Archer, supra*. In essence, the appellants want the trial judge to inform the jury to acquit the defendants if it finds that the defendants had no predisposition to use interstate facilities.[17]

 Manifestly, the trial court is under no obligation to give such a charge.[18] Under the Travel Act, specific intent is required to violate state law. There is no requirement that the defendant either have knowledge of the use of interstate facilities or specifically intend to use interstate facilities. *United States v. Doolittle*, 507 F.2d 1368, 1372, *aff'd en banc*, 518 F.2d 500 (5 Cir. 1975), *cert. denied*, 423 U.S. 1008, 96 S.Ct. 439, 46 L.Ed.2d 380 (1975); *United States v. LeFaivre*, 507 F.2d 1288, 1296 n.10 (4 Cir. 1974), *cert. denied*, 420 U.S. 1004, 95

S.Ct. 1446, 43 L.Ed.2d 762 (1975); *United States v. Roselli*, 432 F.2d 879 (9 Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Hanon*, 428 F.2d 101 (8 Cir. 1970), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971); *United States v. Miller*, 379 F.2d 483 (7 Cir.), *cert. denied*, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967). *But see United States v. Prince*, 529 F.2d 1108 (6 Cir. 1976). Congress, in passing the Travel Act, determined that a predicate of federal jurisdiction is the travel in interstate or foreign commerce or the use of interstate facilities. *United States v. LeFaivre, supra*. Consequently, there is no necessity that the jury be informed that the defendants must intend to use interstate facilities. It is enough for the jury to determine, under a substantive Travel Act charge, that the defendants, in fact, used interstate facilities. The defendants' argument that the government improperly obtained jurisdiction is for the court to determine as a matter of law, as we have done in Section IV, *supra*.

In *Archer*, Judge Friendly distinguished between the court's holding regarding the improper manufacture of jurisdiction and the function of the entrapment charge:[19]

It is not a sufficient answer that if the issue here were simply one of entrapment, the jury would have been justified in finding, under the entirely correct instruction on the subject given by the judge, that Klein had a propensity for crime, requiring no encouragement from the federal agents. Our holding is rather that when Congress responded to the Attorney General's request to lend the aid of federal law enforcement to local offi-

---

17. LaFont requested the following charge:

If the jury finds that the use of interstate facilities in furtherance of the criminal charge was the calculated result of actions of the government and not the unprovoked actions of the defendant then in that event the jury shall find the defendant not guilty by reason of entrapment.

18. Arguably the district court opinion in *United States v. Archer*, 355 F.Supp. 981, 987 (S.D.N.Y.1972) supports the appellants' position. To the extent that it does, we specifically disapprove of that holding.

19. Related to the improper manufacture of jurisdiction is the power of a federal court to dismiss prosecution because of impermissible government involvement in the enterprise. This is the question not reached by the *Archer* Court, *id.* at 676, but the Supreme Court in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), has explicitly held that this inquiry is not a part of the entrapment question.

cials in the prosecution of certain crimes, primarily of local concern, where the participants were engaging in interstate activity, it did not mean to include cases where the federal officers themselves supplied the interstate element and acted to ensure that an interstate element would be present.

486 F.2d at 682.

## VI.

■ Finally, Perrin contends that the trial court erred by refusing to sever the trial of defendant Perrin from the trial of the other defendants. Using *Bird v. Wainwright*, 428 F.2d 1017 (5 Cir. 1970) and *United States v. Martinez*, 486 F.2d 15 (5 Cir. 1972) as our guide, it becomes apparent that Perrin proffered no evidence that was denied admission into evidence because of the joint nature of the trial. Furthermore, Perrin is not entitled to a separate trial just because he wishes to comment on the failure of the other defendants to testify. *Gurleski v. United States*, 405 F.2d 253 (5 Cir. 1968).

## VII.

We have examined the appellants' remaining contentions and have found them unworthy of comment. We therefore conclude that the appellants were properly convicted and their convictions must be affirmed.

AFFIRMED.

ALVIN B. RUBIN, Circuit Judge, dissenting:

Sound public policy might induce Congress to proscribe corruption of private persons in the Travel Act. In my view, however, it has not yet seen fit to do so. Therefore, I respectfully dissent.

One of the classic limitations in the enforcement of criminal law, which is embedded implicitly in the Due Process Clause of the Constitution, is summed up in the phrase, "Nulla poena sine lege"—there should be no punishment without prior statutory mandate. My brethren require four pages of dialectic to determine that the unadorned word "bribery" in the Travel Act provides authority for the punishment by the Federal Government of "commercial bribery." The layman would scarcely choose so uncertain a route to define a clear proscription, nor indeed would the Second Circuit, *United States v. Brecht*, 2 Cir. 1976, 540 F.2d 45, *cert. denied*, 1977, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573.

We cannot truly ascribe to Congress any intention either to include or exclude commercial corruption; Congress did not deal with the problem. As one scholar has said:

The difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the Legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind, if the point had been present.[1]

We are thus in the position, in resolving this case, of deciding what Congress would have done had it debated the appropriate scope of the Travel Act with regard to commercial corruption.

My brethren find these footprints to guide them on the trail of meaning: first, common experience teaches us that organized crime may attempt to corrupt private citizens; second, Congress, in other statutes, has proscribed bribery of persons who are not public officials; third, the Supreme Court, in *United States v. Nardello*, 1969, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487, refused to limit the word "extortion" to its common law meaning and defined it to include blackmail.

With deference, I must say that much of this seems to me to constitute reasoning backward from the result desired. That common experience teaches us the breadth of organized crime is not a *reason* to say that Congress *did* include commercial corruption in the word "bribery," although it may well someday prove ample reason for a

---

1. Gray, Nature and Sources of the Law: Statutes 173 (1921 ed.).

legislator to decide to do so. Indeed, what "our common experience" teaches us as judges about organized crime, I do not know; I know nothing about it that may be noticed judicially. Federal Rules of Evidence, Rule 201. Moreover, whatever common experience has taught judges in this regard is, in any event, presumably known also by legislators. We thus return to the question why, in the face of such experience, did Congress not proscribe commercial bribery specifically. That inquiry is all the more troublesome because, as the majority notes, Congress elsewhere saw fit to proscribe specifically, and not generically, forms of bribery that go beyond the offense as known at common law.

Let me place a few grains on the side of the scale counterbalancing the arguments used by my brethren.[2] As set forth in *United States v. Brecht, supra,* only 13 states had commercial bribery statutes in 1960, the year before the Travel Act was enacted. *United States v. Brecht, supra,* 540 F.2d at 48. At least six states, as recently as 1976, did not even mention the word "bribery" in defining the offense now commonly called commercial bribery. *Id.* at 49 n.6. In Louisiana, as in New York and most other states that proscribe commercial bribery, the offense prohibited is a misdemeanor. It is punishable in Louisiana by a maximum of imprisonment for six months and a fine of no more than $500, or both. LSA–R.S. 14:73. Because of the majority's holding, the added element of interstate

travel escalates commercial bribery to a federal crime, and to a felony punishable by imprisonment for up to five years and a fine of up to $10,000, or both. 18 U.S.C. § 1952(a).[3]

None of these factors is conclusive. Together, however, they weigh enough at least to balance, and, in my opinion, to tilt the scales to the other side. I would not read a criminal statute whose meaning is so ambiguous as justifying the interpretation placed on it by the majority and our colleagues of the Fourth Circuit.

Some passing reference to the factual context of this case may be appropriate in conclusion: the fish the Government caught in this Travel Act net were small fry. Its plan was to land a person who is reputed to be a criminal shark. Without reciting the facts in detail, it is evident that his possible involvement was scent to the F.B.I. The target refused the bait offered him by Willis, Perrin, Levy, and LaFont. Each of them, if guilty of anything, can be prosecuted under state law. I would leave them and the record of the trial to state authorities; I would leave to Congress the amendment of the statute to make the mesh of the net smaller if it seeks to catch the commercially corrupt in the future.

---

**2.** The Report of the Committee on the Judiciary, United States Senate, to accompany S. 1437, the proposed new federal criminal code, S.R. 95–605, 95th Cong., 2d Sess. (1977), at 388, interprets the present bribery law as contemplating "the violation of the public servant's duty." It later states, seeming to make ambiguous what was clear, that the bribe itself is a "*quid pro quo* for the violation of an official or *legal* duty." *Id.* (Emphasis supplied.) Assuming that an expansive reading of this interpretation correctly construes 18 U.S.C. § 1952, the Travel Act would still appear to be aimed at a narrower range of conduct than is reached by Louisiana's commercial bribery statute; under the wording of the state statute, see Memorandum Opinion at 632, note 3, *supra,* it is not an element of the offense that the bribe-giver seek a violation of the bribe-taker's legal duties.

**3.** The offenses proscribed by the Pennsylvania blackmail statutes involved in *United States v. Nardello, supra,* Act of June 24, 1939, Pub.L. 872, §§ 802, 803 (current version at 18 Pa. Const.Stat.Ann. §§ 3923(a)(2) and (a)(3) (Purdon)), are punishable under current law by two years of imprisonment, 18 Pa.Const.Stat.Ann. §§ 106(d) and 1104(2), the same maximum state penalty for political bribery, Act of June 24, 1939, Pub.L. 872, § 4318 (current version at 18 Pa.Const.Stat.Ann. § 4702), unless the offender threatens "to commit a crime" or makes a threat "with intent to influence a judicial or administrative proceeding," 18 Pa.Const.Stat. Ann. § 4702(c) (Purdon), in which case the maximum penalty is seven years of imprisonment, 18 Pa.Const.Stat.Ann. § 1103(3) (Purdon).