**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frances PECORA and Nofio Pecoraro,
a/k/a Norfio Pecora, Jr.,
Defendants-Appellants.**

No. 81–3312.

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1982.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1983.

James A. McPherson, New Orleans, La., for defendants-appellants.

Frank G. DeSalvo, New Orleans, La., for Nofio Pecoraro.

John Volz, U.S. Atty., Pauline F. Hardin, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

Defendants Frances Pecora and her son, Nofio Pecoraro, were charged by indictment with conspiracy, wire fraud, and use of an interstate facility to carry out a bribery scheme in violation of 18 U.S.C. §§ 2, 371, 1343, and 1952.[1] After pleas of not guilty were entered, both defendants moved to dismiss the indictment for lack of jurisdiction.[2] The district court deferred ruling on

---

[1]. 18 U.S.C. § 1343, the wire fraud statute, reads:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The Travel Act, 18 U.S.C. § 1952, reads, insofar as is pertinent here:

> (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, man-

agement, establishment, or carrying on of any unlawful activity,

> and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
> (b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
> . . . .

[2]. Defendant Frances Pecora also separately filed a motion to dismiss on jurisdictional grounds and on the ground that the indictment was multiplicious.

this motion pending presentation of evidence at trial. Following a jury trial, each defendant was found guilty. The defendants again asserted their jurisdictional argument in a motion for judgment of acquittal, which the district court denied. Sentences were assessed, and this appeal followed.

## Background

Nofio Pecoraro was arrested on October 13, 1980, on state charges of possession with intent to distribute marihuana. The next day, Frances Pecora met Sheriff Layrisson, who held her son in custody. Two weeks later, Jimmie Burrescia[3] met with Layrisson and discussed campaign contributions (regarding a millage campaign) as well as the individuals arrested in the drug "bust," including Pecoraro. On October 29, Burrescia returned to the sheriff's office and gave $9,000 in cash to Layrisson and the District Attorney of Tangipahoa Parish. Prior to the conversation, a Special Agent of the Federal Bureau of Investigation had been contacted, and the affair was recorded. The money was given to Burrescia by Frances Pecora for the purpose of insuring that her son would not be convicted. On November 5, 1980, the sheriff, District Attorney, and Burrescia met again to discuss the bribe, and this conversation was likewise recorded. A meeting in which Frances Pecora was included was set up for the next day at Burrescia's home. This meeting, likewise recorded, revealed that Pecora wanted the help of the sheriff and the District Attorney in protecting her son. Several more meetings, all recorded, between Layrisson and Burrescia took place in the following weeks, and the sheriff indicated that he wanted to talk to Pecora. Thus Burrescia attempted to call Frances Pecora from the sheriff's office, and learned that she was in Georgia. He then told the sheriff that he would have Pecora call the sheriff from Georgia.

Later that day, Burrescia called Sheriff Layrisson and then handed the telephone to Nofio Pecoraro to talk to the sheriff. Layrisson asked Pecoraro to have his mother call him. The following morning, Frances Pecora returned the sheriff's call and explained that she was in Georgia to visit a sick friend and that she had been told that he wanted to talk to her. In the conversation that ensued, many of the details and terms of the bribery scheme were discussed.

## Threshold Issue: Jurisdiction under Sections 1952 and 1343

The initial issue raised by the defendants is whether the federal courts may assume jurisdiction over this local bribery case, involving only Louisiana residents, under 18 U.S.C. §§ 1343 or 1952 on the basis of a single interstate telephone call made at the request of Sheriff Layrisson. The government argues that this call was sufficient to establish jurisdiction under the Travel Act (§ 1952) and also under the wire fraud statute (§ 1343) because the phone call facilitated the bribery and because the call was made for the purpose of executing the bribery scheme. Passing upon this slender jurisdictional basis requires us to examine closely the recent cases construing these federal laws.

In *United States v. Perrin*, 580 F.2d 730 (5th Cir.1978), *aff'd*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), this court, faced with a similar claim that interstate contacts were insufficient to found jurisdiction under the Travel Act, held that one interstate phone call by a defendant to obtain gravity maps necessary to exploit stolen seismic exploration charts was sufficient to invoke § 1952 jurisdiction. We found "no requirement that the use of interstate facilities be essential to the scheme: it is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the unlawful activity." 580 F.2d at 736, *citing Rewis v. United States*, 418 F.2d 1218, 1221 (5th Cir.1969), *rev'd on other grounds*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). We see no principled distinction between this case and the present one. There, as here, the defendant

---

3. A third defendant, who was convicted and did not appeal.

argued "that the interstate nexus supplied by their use of interstate facilities was isolated, minimal, inconsequential, and nonessential to the ... scheme and insufficient to establish jurisdiction under the Travel Act." *Id.* at 735. The court responded by holding that one telephone call sufficed.

And in *United States v. Jones,* 642 F.2d 909 (5th Cir.1981), we again held that "[a]s long as the interstate travel or use of the interstate facilities and the subsequent facilitating act make the unlawful activity easier, the jurisdictional requisites under § 1952 are complete." 642 F.2d at 913, relying on *Perrin, supra.* The defendant in *Jones* made a trip from Oklahoma to Texas to cash wagering checks in "facilitation" of an ongoing gambling enterprise.

Under the facts before us, there can be no doubt that the phone call from Pecora in Georgia to the sheriff in Louisiana facilitated and made easier the bribery scheme. Indeed, the entire conversation consisted of details involving the attempted bribery, and the scheme was undoubtedly furthered by the lengthy discussion of these details. Nevertheless, the defendants argue that even if the bribery scheme was made easier due to the phone call, the call was so fortuitous and incidental that it does not invoke § 1952 jurisdiction.

In *United States v. Archer,* 486 F.2d 670 (2d Cir.1973), the court found that a phone call from Paris to New York, made by an undercover agent, "served no purpose that would not have been equally served by a call from New York," and could thus be characterized as "a casual and incidental occurrence," *United States v. Corallo,* 413 F.2d 1306, 1325 (2d Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969), or "a matter of happenstance," *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493, 496 (1971). 486 F.2d at 682–83.

The defendants make several arguments on the basis of the above cases. As we have already said, we reject any contention that the phone call from Georgia did not facilitate or benefit the bribery scheme. We likewise reject the defendants' suggestion that the request by the sheriff for Frances Pecora to call him was an attempt artificially to create or manufacture federal jurisdiction under the Travel Act; the district court found as a fact and on ample evidence that the sheriff requested Burrescia to have Frances Pecora call him before the sheriff knew that she was in Georgia. Unlike *Archer,* the interstate element in this case was not furnished solely by undercover agents and there is no question of any attempt to contrive jurisdiction.

■ Finally, we discern in the Travel Act no exception for casual and incidental occurrences or for "happenstance" ones. Its language is straightforward and comprehensive. Therefore, even were we not constrained by our prior holdings in *Perrin* and *Jones,* we would conclude that jurisdiction existed here.

■ As to the convictions under the wire fraud statute, 18 U.S.C. § 1343, the defendants repeat their arguments challenging jurisdiction. Here as well, however, the use of interstate wires need not actually further the illegal scheme, but need only be intended to execute the scheme. *United States v. Hammond,* 598 F.2d 1008, 1010 (5th Cir.), *remanded on rehearing,* 605 F.2d 862 (5th Cir.1979). In *United States v. Davila,* 592 F.2d 1261 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 85, 62 L.Ed.2d 56 (1979), we held that an interstate transmission "at the heart" of a scheme cannot be too incidental to invoke § 1343 jurisdiction. And we have likewise held that one phone call is sufficient to constitute an offense, *Huff v. United States,* 301 F.2d 760, 765 (5th Cir.), *cert. denied,* 371 U.S. 922, 83 S.Ct. 289, 9 L.Ed.2d 230 (1962). As with the travel act, jurisdiction was present here on the plain language of the wire fraud act.

### Refusal to Excuse Juror

■ During an evening recess, when a juror answered the telephone at about 11:00 p.m., a female voice inquired whether she was on the jury. Upon being told that she was, the caller asked in what case. At this

point, the juror replied that she could not talk, hung up and disconnected the telephone. She advised the judge of the incident the next morning, stating in response to his questions that she would not be affected by it and that the other jurors regarded the incident, of which she had told them, as a prank. Out of her presence, defense counsel requested that she be excused and replaced by one of the several alternate jurors. Before us, appellant Pecoraro contends that the judge erred in declining to do so. The situation was a delicate one, fraught with potential for error. *See, e.g., United States v. Forrest,* 620 F.2d 446 (5th Cir.1980). We conclude, however, that Pecoraro has waived any right to complain of the court's refusal to excuse the juror.

At the conclusion of the colloquy with the juror in question, the trial judge voiced his concern that to excuse her at such a time and on such a ground might encourage further attempts by the nighttime caller to disqualify jurors, so that "we may end up with no jury at all." After further discussion between court and counsel, the court adopted—with the apparent acquiescence of all counsel—a compromise course: the juror would be retained on the panel, but counsel's right to re-urge the motion to strike her or the entire panel at any later time was expressly reserved and maintained by the court. No effort to do so was ever made by any counsel thereafter.[4] We conclude that this failure to raise the matter again at trial and, in effect, to gamble on a favorable verdict while reserving the objection for appeal constitutes an impermissible attempt to sandbag the judicial process.

■ This we cannot countenance; the point has been waived. Nor, assuming that considerations of plain error are appropriate to this situation of apparent deliberate waiver, are any of these apparent. The trial judge, impliedly at least, accepted the juror's assertions that this simple inquiry as to her status as a juror would not affect her

and that the other jurors regarded it as a prank or joke. In this, no such error appears as, by its obviousness or otherwise, was of such magnitude as to call in question the fairness, integrity or public reputation of the proceedings. *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

### Other Claims for Reversal

Appellants advance several other points for reversal: that the wire fraud and travel act counts are multiplicitous, that the court erred in refusing to admit transcripts of certain taped conversations, that certain comments in argument by counsel for the United States were erroneous, and that certain instructions and refusals to instruct by the trial judge—as in declining to instruct on a duress defense—were reversible. We have considered all of these carefully, in the context of the trial, and conclude that none merits discussion.

### Conclusion

For the above reasons, the judgments below are

AFFIRMED.

JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part:

I concur fully in the Court's opinion on "Refusal to Excuse Juror" and "Other Claims for Reversal". This includes as well the Court's determination as to both §§ 1343 and 1952 that the telephone call from Georgia was not contrived as an attempt artificially to create or manufacture federal jurisdiction. Furthermore and not without substantial misgivings, I concur in the affirmance of the conviction for violation of the Travel Act, 18 U.S.C. § 1952.

But as to the conviction for wire fraud violation, 18 U.S.C. § 1343, I must dissent.

To begin with, I agree with the Court that "the use of interstate wires need not actually further the illegal scheme, but need only be intended to execute the

---

4. That defense counsel retained the incident in mind is evidenced by the inquiry of one, near the close of the trial, whether any other juror had reported such an attempted contact, as the court had instructed all to do. None had.

**426**

scheme". At p. 424, and the Court's citation and quotation from *United States v. Davila,* that the interstate transmission "at the heart of the scheme" must be more than just incidental. But the phone call from Pecora in Georgia was clearly not at the "heart" of this bribery scheme. Even though the details of the phone conversation clearly furthered the bribery scheme, the use of interstate facilities was incidental. The wire fraud statute is analogous to the mail fraud statute, 18 U.S.C. § 1341, *Napper v. Anderson, Henley, Shields, Bradford & Pritchard,* 500 F.2d 634, 636 (5th Cir.1974), *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975), and there is no § 1341 violation if the use of mails is incidental and unpremeditated, *Glenn v. U.S.,* 303 F.2d 536 (5th Cir.1962). Because federal jurisdiction should not be based on fortuity, such as the incidental phone call made by Pecora when she heard that the sheriff wanted to talk to her, I cannot find jurisdiction proper under § 1343.

I would therefore reverse with directions to dismiss the wire fraud count.